JAMES S. WOLFE, *etc.*

*v.*

GLADYS FORBES, *et al.*

*and*

ROBERT P. BLACKWELL, *et al.*

*v.*

THE CITY OF MOUNDSVILLE, *et al.*

(No. 13228)

Decided September 9, 1975.

*John T. Madden and G. Charles Hughes, George G. Bailey* for plaintiffs in error.

*S. Robert Reiter* for Gladys Forbes, defendant in error.

HADEN, CHIEF JUSTICE:

This is a consolidated appeal by James S. Wolfe, City Manager and Zoning Administrative Officer of the City of Moundsville and Robert P. Blackwell, *et al.* protesting adjoining property owners, from a final judgment of the Circuit Court of Marshall County, which affirmed the decision of the Board of Zoning Appeals of the City of Moundsville in its granting of a use variance to Gladys Forbes permitting the operation of a rest home within a residential area designated as R-3 by the City's Zoning Ordinance.

The principal issue of this appeal is whether Moundsville's Board of Zoning Apeals, a creature of statute and ordinance, was given discretion by the City of Moundsville Zoning Ordinance of June 13, 1960 to grant Ms.

Forbes authorization to use her property in a manner otherwise prohibited by the Zoning Ordinance. For reasons which shall appear, this Court is of the opinion that the Board of Zoning Appeals was without such discretion and, therefore, exceeded its lawful powers. Accordingly, the judgment of the court below must be reversed.

For a period of time beginning two or three years prior to September 1970, Gladys Forbes established and operated for profit a custodial care facility for eight to ten elderly indigent persons on the premises of a rented house at 1207 Short Center Street in Moundsville. Under the terms of the Zoning Ordinance of the City of Moundsville, as enacted in 1960, this business was an illegal[1] nonconforming use when conducted within an R-3 zone.[2] By Article VI, §2 of the Ordinance, the permitted uses of the premises at 1207 Short Center Street generally were restricted to a two-family residential use.

When Ms. Forbes discovered she was using the premises in violation of the Zoning Ordinance, she applied to the Zoning Administrator of Moundsville for a Certificate of Occupancy to use the premises as a nursing home. On September 18, 1970, James S. Wolfe, the Zoning Administrative Officer, refused the Forbes' application because, in his opinion, the Ordinance prohibited the proposed use within an R-3 zone. Ms. Forbes then applied to the Board of Zoning Appeals for a variance from

---

[1] A permissible or legal nonconforming use under the Ordinance is defined as: "Non-Conforming Use—Any building or land lawfully occupied by a use at the time of passage of this ordinance or amendment thereto, which does not conform after the passage of this ordinance or amendment thereto with the use regulations of the district in which it is situated." Article XVI of the Ordinance allows the continuance of a nonconforming use in a zone prohibiting such use where the use was in existence at the date of the adoption of the ordinance. And *see*, *W. Va. Code* 1931, 8-24-50, as amended.

[2] According to Article VIII, §1(10.) in an R-3 Zone, a residential two-family use district, "the use regulations shall be held to prevent the renting of rooms or lodgings or the serving of meals for compensation to more than three (3), in a single and two-family use district, non-transients in one day."

the terms of the Ordinance which would permit the use of her house as a nursing home. The Board denied her request. Thereafter, she filed a petition for a writ of certiorari to the Circuit Court of Marshall County. That court denied the relief sought and affirmed the action of the Board. Ms. Forbes did not appeal that decision of the circuit court.

Later, in July 1971, she filed a second application with the Board of Zoning Appeals seeking a variance to operate the premises at 1207 Short Center Street as a rest home. On this occasion she was successful and the Board awarded the variance. In separate applications, Wolfe, the Zoning Administrative Officer, and Robert P. Blackwell, along with twenty-six protesting adjoining owners of property located near the Forbes' premises, sought a review of the Board's decision by certiorari in the Circuit Court of Marshall County. The court granted the two separate applications, consolidated the separate proceedings into one and reviewed the record from the Board hearing. To make up a record of the proceedings before the Board of Zoning Appeals the Board entered an order containing the findings of fact it had reached in granting the variance to Ms. Forbes.

The circuit court made the Board's order a part of the record, reviewed and considered it with other evidence at a hearing conducted on December 6, 1971. Thereafter, the court rendered its memorandum of opinion and final order affirming the Board's decision.

As an initial matter, the appellants argue that all of the facts and questions considered at the second Board of Zoning Appeal's hearing on the application for the rest home variance were identical to those considered and decided by the Board in its first proceeding which passed upon the application for the nursing home. If this be so, then the general principles of *res adjudicata* and the rule established in *Mustard v. City of Bluefield*, 130 W. Va. 763, 45 S.E.2d 326 (1947) would have negated the Board's power to conduct a second hearing. In *Mustard, supra,* this Court held:

"Under a zoning ordinance of a municipal corporation, implementing Code, 8-5-7, [now W. Va. *Code* 1931, 8-24-55, as amended] in which a board of adjustment, created thereby, is empowered to make a variance of the strict application of the zoning regulations, under certain specified conditions, such board of adjustment, after having taken final action upon an application for a variance, is without power to reopen the proceeding and grant a rehearing or reconsideration of its action, in the absence of new facts or authority residing in the board, under the provisions of the ordinance." *Syllabus* point 1., *id.*

The Zoning Ordinance makes no relevant reference either to nursing homes or rest homes. Obviously, the distinction, if any, between the two activities must be found in the record of the case or in the general law of this State. The record contains letters from the West Virginia Department of Welfare addressed to Ms. Forbes' counsel which notes legal distinctions between nursing homes and rest homes, the latter being euphemized as "Personal Care Homes." In the former, the administrator is required to be licensed by the State and to meet standards which mandate available medical care for the patients of the home and requiring, at a minimum, professional nursing skills. *See, W. Va. Code* 1931, 16-5C-2(a), as amended; *see generally, W. Va. Code* 1931, 16-5C-1 *et seq.* and 16-5D-1 *et seq.*, as respectively amended. Personal care homes, on the other hand, are places for the care of aged or infirm persons whose primary need is a home with such sheltered and custodial care as their age or infirmities require, and where medical attention is only occasional or incidental to the principal services rendered. *See, W. Va. Code* 1931, 16-5E-1 *et seq.*, as amended.

Both the record of this case and the law demonstrate significant differences between Ms. Forbes' first and second applications for a variance. Accordingly, the Court is of the opinion that the Board of Zoning Appeals did not purport to "rehear" the first Forbes' application for a variance while entertaining the second. Likewise, be-

cause the second application materially differed from the first, the principle of *res adjudicata* does not apply to bar an application for a new variance. In this regard, the Court has recognized and applied the rule that:

> "To justify the application of the doctrine of *res judicata*, '. . . there must be a concurrence of four conditions, namely: (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons, and of parties to the action; (4) identity of the quality in the persons for or against whom the claim is made.' Opinion. *Marguerite Coal Co. v. Meadow River Lumber Co.*, 98 W. Va. 698." Syllabus, *Hannah v. Beasley*, 132 W. Va. 814, 53 S.E.2d 729 (1949).

We are of the further opinion that determinations made by a board of zoning appeals, that there were material changes and new facts upon which the board could entertain a second application for a variance in the use of property, presented mixed questions of fact and law. As such, the decision to entertain a second application should not be disturbed by a reviewing court unless it is contrary to law or plainly wrong under the evidence. *See, Tidewater Utilities Corp. v. City of Norfolk*, 208 Va. 705, 160 S.E.2d 799 (1968); *C. & C., Inc. v. Semple*, 207 Va. 438, 150 S.E.2d 536 (1966); Annot. 52 A.L.R.3d 494 (1973).

The principal assignment of error in the case relates to the authority of the Board of Zoning Appeals to grant Ms. Forbes a use variance from the terms of the City's Zoning Ordinance.

In West Virginia, municipalities derive general authority to adopt zoning ordinances from *W. Va. Code* 1931, 8-24-39, as amended. The specific power to classify and control land use through zoning, including the right to exclude proposed businesses from areas or districts designated as residential, was granted the governing body of a municipality as follows, *inter alia:*

> ". . ., the governing body of a municipality . . . shall have the following powers:

. . . .

(3) To regulate and determine the use and intensity of use of land and lot areas;

(4) To classify, regulate and restrict the location of trades, callings, industries, commercial enterprises . . .;

. . . .

(7) To divide the municipality . . . into districts of such kind, character, number, shape, and area as may be deemed necessary to carry out the purposes of this section."

Pursuant to this authority, the City of Moundsville, through its common council, adopted a comprehensive zoning ordinance in 1960. In the Ordinance, the governing body of Moundsville established four residential districts and permitted, under certain conditions, the establishment of certain nonresidential uses in those districts. Except, however, in an R-4 district, the Ordinance absolutely prohibited the renting of rooms or lodgings or the serving of meals for compensation to more than three non-transient persons in one day in residential districts. Similar exclusionary zoning provisions have been approved by the courts. Zoning ordinances establishing residential districts from which business and commercial enterprises are excluded by a comprehensive plan are recognized as valid as a proper exercise of the police power of a state. *State ex rel. Cobun v. Town of Star City*, W. Va., 197 S.E.2d 102 (1973); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). The validity of the pertinent exclusionary provision in the Moundsville Zoning Ordinance is not questioned in this appeal.

Nevertheless, the court below held that the Board of Zoning Appeals properly granted Ms. Forbes a use variance to operate a rest home business in a residential district, although such operation violates the above ordinance provision prohibiting such activities in an R-3 zone.

The question then becomes: under what circumstances, if any, may a board of zoning appeals, an administrative delegate of the governing body of a city, vary from or ignore the literal provisions of a zoning ordinance in granting relief to property owners?

When a municipality chooses to adopt a zoning ordinance, *W. Va. Code* 1931, 8-24-51, as amended, requires that it, as a part of the ordinance, also, "shall create a board of zoning appeals consisting of five members to be appointed by the governing body of the municipality . . . ." The mandatory responsibilities of a board, once created, are to be found in *W. Va. Code* 1931, 8-24-51, as amended. Among its duties pertinent to this case,

"The board of zoning appeals shall:

(1) Hear and determine appeals from and review any order, requirement, decision or determination made by an administrative official or board charged with the enforcement of any ordinance or rule and regulation adopted pursuant to sections thirty-nine through forty-nine [§§8-24-39 to 8-24-49] of this article;

. . . .

(4) Authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." *Id.*

The ultimate scope of a board's powers is found in the concluding paragraph of *Section* 55:

"In exercising its powers and authority, the board of zoning appeals may reverse or affirm, in whole or in part, or may modify the order, requirement, decision or determination appealed from, as in its opinion ought to be done in the premises, and to this end shall have all the powers and authority of the official or board from whom or which the appeal is taken."

When the City Council enacted the Moundsville Zoning Ordinance, it adopted verbatim the statutory language of *W. Va. Code* 1931, 8-24-55(4), *supra*, relating to variances. Additionally, Council authorized the Board, if it deemed proper, to impose reasonable conditions upon the granting of variances and further specified several instances[3] in which the Board was permitted to grant a variance. It is apparent that the Council did not limit the Board to the twelve specified situations in entertaining variances, since the "among other variances" lan-

---

[3] "In exercise of this power the Board may, among other variances, authorize a permit to be issued:

(1) For a reasonable extension of the uses of either district over a lot divided by a district boundary line, when all parts of such lot are held under the same ownership at the time of the passage of this ordinance.

(2) For the establishment and maintenance of a non-conforming use on a lot adjacent to a lot, the use of which, at the time of the passage of this ordinance, does not conform to the regulations herein contained, when the existing non-conforming use renders reasonably impracticable, the improvement of such lot without such modification; provided that any non-conforming use so permitted shall not be of a less restrictive use classification than that to which said existing non-conforming use is assigned by the terms of this ordinance.

(3) For the reconstruction of a non-conforming building which has been damaged by explosion, fire, act of God or the public enemy, to the extent of more than sixty (60) percent of its fair market value, where the Board finds some compelling necessity requiring a continuation of the non-conforming use or where the Board finds that it is not reasonably practicable to use the structure and/or lot for a conforming use.

(4) For resumption of a non-conforming use of a building in a residence district, when such non-conforming use has been discontinued for a period exceeding one (1) year and has not been followed by a more restricted use, and when it is not reasonably practicable to utilize the lot, upon which such building is located, for a conforming use or when the discontinued use to be resumed represents a long established service previously maintained in the particular residential use district involved.

(5) For such variance of the area regulations of any district as the Board may deem necessary to secure an appropriate improvement of a lot of such restricted area, size and shape or topographical conditions that it cannot be reasonably improved

guage preceding the list of twelve specified instances indicates that the list was not exclusive. Nevertheless, neither the West Virginia Code nor the Moundsville City Ordinance defines the term variance. Consequently, in construing the whole ordinance to determine the meaning of "variance" and the Board's authority to grant a variance, the list of City Council's contemplation of authorized variances serves as the best reference of what Council intended the Board's variance powers to include.

---

without modification of the strict application of the provisions of this ordinance, provided such lot at the time of passage of this ordinance, either was held under a separate ownership from the adjoining lots, or was shown on a recorded plat to be a separate and distinct numbered lot.

(6) For the erection or use of a structure in any district by a public service corporation, when such erection or use is reasonably necessary for the service of the public.

(7) Upon recommendation from the City Planning Commission, the Board may authorize by special permit and subject to such protective restrictions as it deems necessary, the location in any district within the City of any public building or structure used by any department of the city, county or state or federal government or a municipal board. For residential districts, the requirements of the district in which they are located must be met.

(8) For a detached private garage built in a terrace on the front of a lot in a residential district where the topographical conditions are such as to make it impracticable to construct such garage as required under this ordinance.

(9) For the use of land or the erection or use of a building or structure such as a contractor's storage or real estate office yard, for commercial purposes in a residential district, in cases where such use is incidental and reasonably necessary to the development of the district for residential purposes, and where the proposed use is clearly of a temporary nature, to be abandoned as the adjacent areas become occupied by residence uses. Any permit so authorized shall be only for such limited period of time, and no case more than one (1) year, as the Board considering the character of the district in question shall determine is reasonable.

(10) For a six (6) months continuation of use of any junk and/or automotive wrecking yard in any zoning district beyond a period of six (6) months from the effective date of the Zoning Ordinance which shall not have been completely enclosed with a structure or which shall not have been enclosed on all sides, except for an entrance and exit each not over 25 feet in width,

An obscure, but nevertheless recognized, rule of construction aids the Court in reaching this conclusion:

"It is a fundamental rule of construction that in accordance with the maxim 'noscitur a sociis' the meaning of a word or phrase may be ascertained by reference to the meaning of other words or phrases with which it is associated. Language, though apparently general, may be limited in its operation or effect where it may be gathered from the intent and purpose of the statute that it was designed to apply only to certain persons or things, or was to operate only under certain conditions." 17 M.J. *Statutes* §63 (1951).

*Accord:* 73 Am. Jur. 2d *Statutes* §213 (1974); *Black's Law Dictionary* 1209 (4th Ed. 1951). As noted by the highest court of another jurisdiction, the doctrine " 'means that general and specific words which are capable of an analogous meaning being associated together take color from each other so that the general words are restricted to a sense analogous to the less general.' " *Dunham v. State*, 140 Fla. 754, 758, 192 So. 324, 326 (1939), quoting *Ex parte Amos*, 93 Fla. 5, 15, 112 So. 289, 293 (1927).

---

by a solid wall or solid fence 6 feet in height, provided the owner of said junk and/or wrecking yard shall agree in writing to the satisfaction of the Board, that within the extended 6 months period he shall enclose the yard with a structure or a solid fence or solid wall as prescribed above or similar fence or wall as specified by the Board. (The Board shall be limited to the granting of only one (1) 6 month extension).

(11) For the location or enlargement of an accessory structure in any zoning district (not including a sign) closer to an alley or street lot line than is permitted in the zoning district in which it is proposed to be located, provided more than fifty (50) percent of the accessory structures existing between two intersecting streets or alleys have not observed a setback as prescribed in the zoning district in which it is to be located.

(12) For a variance in the loading and/or parking regulations of this ordinance whenever the character or use of a building is such as to make unnecessary the full provision of parking and/or loading facilities or where such regulations would impose an unreasonable hardship upon the use of the lot, as contrasted with merely granting an advantage or a convenience." Moundsville Zoning Ordinance of 1960, Article XIX, Section 4.

In our opinion the twelve specified variance situations approved by the Moundsville City Council in its Zoning Ordinance granted the Board of Zoning Appeals only meager authority to vary the terms of the Ordinance as it applies to a particular piece of property. From the application of the maxim *noscitur a sociis*, it seems fair to conclude that the "among other variances" language does not enhance the Board's authority, but rather merely permits the Board to grant variances in situations similar to the twelve specified.

As noted, the Moundsville Zoning Appeals Board granted a variance to Ms. Forbes for a use expressly prohibited under the Ordinance in Article VIII, Section 10. In effect, the Board has tried to amend the Ordinance enacted by the City by changing the use district in which 1207 Short Center Street is located. Keeping in mind the limited variance power given to the Board of Zoning Appeals by the City Council, we must concur with the rationale of the leading case, *Lee v. Board of Adjustment*, 226 N.C. 107, 37 S.E.2d 128, 168 A.L.R. 1 (1946), that "no variance is lawful which does precisely what a change of map would accomplish." *Id.* at page 112 of the North Carolina Report.

While on appeal there is a presumption that a board of zoning appeals acted correctly, this Court may disturb a decision where the board has applied an erroneous principle of law, was plainly wrong in its factual findings, or acted beyond its jurisdiction. *See, C. & C., Inc. v. Semple, supra,* and *Azalea Corp. v. City of Richmond*, 201 Va. 636, 112 S.E.2d 862 (1960). As correctly noted in *Lee v. Board of Adjustment, supra,* a zoning appeals board is simply "an administrative agency, acting in a *quasi*-judicial capacity." *Id.* at page 111 of the North Carolina Report. A board of zoning appeals is not a law-making body and, consequently, has no power to amend the zoning ordinance under which it functions. This is particularly true under the West Virginia statute, where, as previously noted, only the governing body of a municipality is granted the authority to regulate and determine the use of land, to classify, regulate and restrict

the location of businesses, and to divide the municipality into zoning districts. *W. Va. Code* 1931, 8-24-39, as amended, *supra*. Although this Court recognizes the serious need for rest or "personal care" homes and supports their growth and development within the State, we cannot, in good conscience, affirm an action of an administrative body resulting from an impermissible attempt to legislate under the guise of granting a variance. Whether Ms. Forbes should be permitted to locate and maintain a rest home in an R-3 district is a matter for City Council, the governing body of the City of Moundsville, to consider by way of amendment. Such discretion was not committed to the Board of Zoning Appeals by the Moundsville Zoning Ordinance of 1960.[4]

For the reasons herein stated, the order of the Circuit Court of Marshall County is reversed.

*Reversed.*

---

[4]In this regard, we note that the City Council of Moundsville has enacted and adopted a new Zoning Ordinance which not only clearly defines a "variance", but which, also, specifically permits the location of rest homes in various residential districts provided certain prescribed conditions are met by the applicant. *See,* Moundsville Zoning Ordinance of 1972.