664 S.E.2d 137

**FAR AWAY FARM, LLC, Petitioner Below, Appellant**

v.

**JEFFERSON COUNTY BOARD OF ZONING APPEALS, a Public Body, Thomas Trumble, Member, Jeff Bresee, Member, and Tiffany Hine, Chair, Respondents Below, Appellees.**

No. 33438.

Supreme Court of Appeals of West Virginia.

Submitted March 11, 2008.

Decided April 17, 2008.

---

Peter L. Chakmakian, Esq., Charles Town, WV and Richard G. Gay, Esq., Nathan P. Cochran, Esq., Law Office of Richard G. Gay, Berkeley Springs, WV, for Far Away Farm, LLC.

Stephanie F. Grove, Esq., Assistant Prosecuting Attorney, Charles Town, WV, for Jefferson County Board of Zoning Appeals.

Linda M. Gutsell, Esq., Charles Town, WV, for Edward E. Dunleavy and Edward R. Moore.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Jefferson County entered on September 18, 2006. In that order, the circuit court affirmed a decision of the appellee and respondent below, the Jefferson County Board of Zoning Appeals (hereinafter "BZA"),[1] which denied the request of the appellant and petitioner below, Far Away Farm, LLC (hereinafter

1. Thomas Trumble and Jeff Bresee, members of the BZA, and Tiffany Hine, Chair of the BZA, were also named as respondents below and are appellees in this appeal.

"FAF"), for a conditional use permit (hereinafter "permit") for the purpose of subdividing and developing 122.88 acres in a designated rural district of Jefferson County, West Virginia. In this appeal, FAF contends that the BZA applied the wrong version of the applicable zoning ordinance; that the BZA failed to consider all three standards set forth in the ordinance for determining whether a permit should be granted; that the BZA was plainly wrong in its factual findings; and that the BZA denied it due process.

Having considered the petition for appeal, the entire record, the briefs and argument of counsel, and the pertinent authorities, we reverse the final order and refer this matter back to the Jefferson County Planning and Zoning Commission with directions to issue the permit to FAF.

## I.

### FACTS

FAF seeks to develop property located in a rural district of Jefferson County, West Virginia. Specifically, FAF's proposal involves dividing 122.88 acres into 152 new home lots, with a ten-acre lot for an existing farmhouse and six acres for a trail and park. Each new home lot would be approximately one-third to one-fifth of an acre. The Jefferson County Zoning and Land Development Ordinance (hereinafter "the Ordinance") does not allow a residential subdivision in a rural district unless the developer is granted a permit through the Development Review System (hereinafter "DRS"). Thus, FAF filed an application for a permit on June 23, 2004.

Upon receipt of the permit application, the Zoning Administrator, Paul Raco, completed a Land Evaluation and Site Assessment (hereinafter "LESA"). Basically, LESA is a numerical rating system used to evaluate the potential of the site in terms of the soil and amenities. The Soils Assessment evaluates the parcel for development based on the soil types it possesses while the Amenities Assessment looks at the site's agricultural viability and its development potential. If the proposed development receives a passing LESA score, the permit application moves onto the next stage of the DRS which is the compatibility assessment meeting. In this case, FAF received a passing LESA score. However, certain community members, Edward E. Dunleavy[2] and Edward R. Moore[3] (hereinafter collectively referred to as "Dunleavy"), disagreed with the LESA score received by FAF and appealed that decision to the BZA. Upon review, the BZA modified the LESA score, but it remained sufficient for the application to move to the next stage of the DRS.

A compatibility assessment meeting was then held in April 2005. At the meeting, which lasted seven hours, FAF presented its development plan and members of the public were allowed to raise compatibility concerns about the project. In total, 106 "compatibility issues" were raised. Thereafter, FAF agreed to modify its development plans to satisfy thirty-nine of the issues.

A public hearing before the BZA was held on July 26, 2005, to discuss the sixty-seven issues that remained unresolved. FAF submitted a thirty-page memorandum addressing each issue as well as additional documentation consisting of approximately 320 pages supporting its position. The BZA allotted FAF thirty minutes to make its presentation and fifteen minutes for rebuttal. Individuals were given fifteen minutes to address the BZA and groups were allotted five minutes. FAF contended that its development was compatible with the character and nature of the land as well as the community because it would consist of single-family homes with a fifty-foot buffer around the whole property. FAF maintained that its development would not create a significant amount of traffic and noted that it would include an old farmhouse and park. Members of the public asserted that the roads were too narrow for a school bus and the increased traffic that would re-

---

**2.** Edward Dunleavy is a resident and president of the homeowners' association of a nearby residential development known as Trough Bend. Trough Bend consists of seven lots, each of which are approximately eight to eleven plus acres in size.

**3.** Edward Moore owns 73.42 acres of land immediately adjacent to the FAF property.

sult from the development. The public also noted the historical significance of the area claiming that it was the site of a civil war battle.[4] At the conclusion of the meeting, the BZA decided to meet on August 9, 2005, to make a decision on the permit application.

At the August 9, 2005, meeting, the BZA concluded that the development as proposed was too dense to be compatible with the surrounding neighborhood, noting that the average lot size in the area was 14.56 acres. The BZA also concluded that the roads were inadequate to deal with the increased traffic that would result from the development. Accordingly, FAF's permit application was denied.

FAF then filed an appeal with the circuit court. Dunleavy also filed an appeal with regard to the LESA score. The cases were consolidated, and on September 18, 2006, the circuit court issued an order affirming the BZA's decisions. This appeal followed.[5]

## II.

### STANDARD OF REVIEW

In this case, we are presented with an appeal of a circuit court order which affirmed the decision of an administrative agency, the BZA. It is well-established that "[o]n appeal, this Court reviews the decisions of the circuit court under the same standard of judicial review that the lower court was required to apply to the decision of the administrative agency." *Webb v. West Virginia Board of Medicine,* 212 W.Va. 149, 155, 569 S.E.2d 225, 231 (2002). With respect to decisions of a board of zoning appeals, this Court has held that, "While on appeal there is a presumption that a board of zoning appeals acted correctly, a reviewing court should reverse the administrative decision where the board has applied an erroneous principle of law, was plainly wrong in its factual findings,

4. FAF contends that there is no proof of this claim but rather, there is evidence that the Battle of Sheperdstown occurred near the river which is about one mile away. Regardless, FAF notes that the circuit court properly ruled that it is exempt from the Ordinance's definition of a historic site as it has never been listed on the West Virginia or National Register of Historic Places.

or has acted beyond its jurisdiction." Syllabus Point 5, *Wolfe v. Forbes,* 159 W.Va. 34, 217 S.E.2d 899 (1975).

This Court has also held that, " 'Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.' Syl. Pt. 4, *Security Nat'l Bank & Trust Co. v. First W. Va. Bancorp.,* 166 W.Va. 775, 277 S.E.2d 613 (1981)." Syllabus Point 3, *Corliss v. Jefferson County Bd. of Zoning Appeals,* 214 W.Va. 535, 591 S.E.2d 93 (2003). " 'While the interpretation of a statute by the agency charged with its administration should ordinarily be afforded deference, when that interpretation is unduly restrictive and in conflict with the legislative intent, the agency's interpretation is inapplicable.' Syl. Pt. 5, *Hodge v. Ginsberg,* 172 W.Va. 17, 303 S.E.2d 245 (1983)." Syllabus Point 4, *Corliss.* With these standards in mind, we proceed to consider the parties' arguments.

## III.

### DISCUSSION

FAF first contends that the BZA erroneously applied the Ordinance as amended on April 8, 2005, to its permit application. FAF points out that the Jefferson County Commission approved amendments to the Ordinance on March 23, 2005. Those amendments did not become effective until April 8, 2005. When the amendments were adopted, the Jefferson County Commission indicated that applications for a permit that were filed before the effective date of the amendments were "grandfathered" and the former version of the Ordinance would apply.[6] Therefore, because it requested a permit on June 23, 2004, FAF maintains that the April 8, 2005 amendments were not applicable.

5. FAF does not challenge the circuit court's decision with respect to the LESA score and Dunleavy did not appeal the decision either. Therefore, the LESA score is not an issue before this Court.

6. FAF says that it did not discover this ruling by the Jefferson County Commission until after its petition for appeal had been filed.

In response, the BZA and Dunleavy[7] contend that FAF has waived its right to argue that the wrong version of the Ordinance was applied to its permit application because the issue was not raised before the BZA or the circuit court. In support of this argument, the BZA cites Syllabus Point 4 of *State v. Browning*, 199 W.Va. 417, 485 S.E.2d 1 (1997), which provides that, "This Court will not consider an error which is not properly preserved in the record nor apparent on the face of the record." The BZA and Dunleavy note that counsel for FAF was involved in the amendment process and thus, assert that FAF had constructive and/or actual knowledge of the amendments as they were approved by the Jefferson County Commission. Because FAF never raised this issue before the BZA or the circuit court, the BZA and Dunleavy reason that the alleged error was not properly preserved and therefore, the issue has been waived.

The BZA and Dunleavy further contend that the County Commission's decision to "grandfather" permit applications submitted prior to the April 8, 2005 amendments only pertained to the requisite LESA score. In other words, the BZA and Dunleavy argue that applications pending at the time of the amendments were required to satisfy all aspects of the Ordinance as amended with the exception of the new LESA scoring system which changed the LESA score needed to advance to the compatibility assessment meeting. Thus, the BZA and Dunleavy conclude that there is no merit to FAF's contention that the April 8, 2005 amendments did not apply to its permit application.[8]

As noted by the BZA and Dunleavy, we generally do not consider arguments raised for the first time on appeal. Syllabus Point 4, *Browning, supra. See also*

*State v. Marple*, 197 W.Va. 47, 51, 475 S.E.2d 47, 51 (1996) ("It is a fundamental proposition of law that an appellate court generally will not entertain an alleged trial error unless it has been properly preserved at trial."); *State v. Miller*, 194 W.Va. 3, 17, 459 S.E.2d 114, 128 (1995), *quoting United States v. Calverley*, 37 F.3d 160, 162 (5th Cir.1994) (*en banc*), *cert. denied*, 513 U.S. 1196, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995) (" 'One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court will result' in the imposition of a procedural bar to an appeal of that issue."). However, " '[l]ack of jurisdiction of the subject matter may be raised in any appropriate manner . . . and at any time during the pendency of the suit or action' " *McKinley v. Queen*, 125 W.Va. 619, 625, 25 S.E.2d 763, 766 (1943) (citation omitted). In fact, this Court has held that "[l]ack of jurisdiction may be raised for the first time in this court, when it appears on the face of the bill and proceedings, and it may be taken notice of by this court on its own motion." Syllabus Point 3, *Charleston Apartments Corp. v. Appalachian Elec. Power Co.*, 118 W.Va. 694, 192 S.E. 294 (1937). We have explained that "[t]he urgency of addressing problems regarding subject-matter jurisdiction cannot be understated because any decree made by a court lacking jurisdiction is void." *State ex rel. Termnet Merchant Services, Inc. v. Jordan*, 217 W.Va. 696, 700, 619 S.E.2d 209, 213 (2005) *citing* Syllabus Point 5, *State ex rel. Hammond v. Worrell*, 144 W.Va. 83, 106 S.E.2d 521 (1958), *rev'd on other grounds*, *Patterson v. Patterson*, 167 W.Va. 1, 277 S.E.2d 709 (1981).

Having reviewed the former Ordi-

7. As noted earlier, Dunleavy appealed the BZA's decision with respect to the LESA score to the circuit court. The circuit court consolidated Dunleavy's appeal with FAF's appeal of the BZA's decision denying the permit. Dunleavy has participated in this appeal as an appellee.

8. Dunleavy also argues that the amendments only collected and clarified the criteria that had been scattered throughout the previous version of the Ordinance and therefore, even if the BZA erred by referring to the amended Ordinance, the

error was harmless as the analysis and outcome would have been the same under the former Ordinance. We disagree. Having reviewed the two ordinances, we find that substantial changes were made. The amendments included specific criteria for determining whether a permit should be issued and furthermore, the initial body charged with deciding whether or not the permit should be issued was changed from the Planning Commission to the BZA. Thus, we find no merit to this argument.

nance and the amended Ordinance,[9] we find that the issue of which Ordinance applied to FAF's application for a permit is properly before the court because it is a jurisdictional matter. In that regard, our review of the former Ordinance revealed that prior to the April 8, 2005 amendments, the BZA was not authorized to make the initial decision to either issue or deny the permit. Rather, Section 7.6(g) of the former Ordinance provided:

> The Planning and Zoning Commission shall issue, issue with conditions, or deny the conditional use permit. The Planning and Zoning Commission shall have the authority over the issue or denial of all development review applications.

Section 7.6(h) of the former Ordinance stated;

> Any person may appeal any decision of the Planning and Zoning Commission regarding the issuance or denial of the Conditional Use Permit to the Board of [Zoning] Appeals pursuant to Article 8.

Finally, Section 7.6(i) of the former Ordinance provided:

> Any person may appeal any decision of the Board of [Zoning] Appeals to the Circuit Court of Jefferson County subject to Article 8, Chapter 24, Subsection 59, of the West Virginia Code, as amended.

Thus, if the former Ordinance applied to the permit application submitted by FAF, the BZA was without jurisdiction to deny the permit in the first instance, and, consequently, its decision would be void as a matter of law. *Jordan, supra.* Accordingly, we must now determine which version of the Ordinance applied to FAF's request for a permit.

■ As discussed above, the Jefferson County Commission voted to amend the Ordinance at its meeting on March 23, 2005. The minutes from that meeting indicate that the following occurred:

> Paul Raco appeared before the Commission to discuss the Zoning Ordinance

Amendments. After discussion, amended motion by Morgan, second by Tabb to approve the March 17th 2005 draft of the Zoning Ordinance Amendments as presented with an effective date of April 8, 2005 with the changes asked by Commissioner Tabb to include the following: Motion carried.

> Take out secondary

> Take out substantial way

> Motion by Tabb, second by Manuel, for administrative purposes to recognize that all applications in the Office of Planning Zoning and Engineering received on and before the closing business of April 8, 2005, which address all the necessary 23 questions on the application be grandfathered in, and that applications received after April 8, 2005 comply with the new amendments. Motion carried.

It is clear from these minutes that the Jefferson County Commission intended for the amendments to the Ordinance to take effect on April 8, 2005, and that any permit application completed prior to that date would be considered under the provisions of the former Ordinance. Because FAF requested a permit on June 23, 2004, and completed the necessary documentation prior to April 8, 2005, we find that the former Ordinance was applicable.

■ The BZA simply had no authority to apply the amended Ordinance to FAF's application for a permit. Long ago, this Court observed that "a zoning appeals board is simply 'an administrative agency, acting in a quasi-judicial capacity.'" *Wolfe v. Forbes*, 159 W.Va. 34, 45, 217 S.E.2d 899, 906 (1975) (citation omitted). We explained that, "A board of zoning appeals is not a law-making body and, consequently, has no power to amend the zoning ordinance under which it functions." *Id.* Likewise, a board of zoning appeals does not have the power to determine the effective date of an amendment to a zoning ordinance. That power belongs to the

---

9. During the pendency of this appeal, FAF filed a motion to supplement the record with a copy of the former Ordinance that was in effect at the time it filed the permit application as well as a certified copy of the March 23, 2005 meeting minutes of the Jefferson County Commission.

Subsequently, the parties signed a stipulation and the record was supplemented with copies of the former Ordinance and the amended Ordinance. This Court has taken judicial notice of the March 23, 2005 meeting minutes of the Jefferson County Commission.

law-making body which in this instance is the Jefferson County Commission.

 This Court has recognized that, "The rules for construing statutes also apply to the interpretation of municipal ordinances." Syllabus Point 1, *in part, Town of Burnsville v. Kwik–Pik, Inc.,* 185 W.Va. 696, 408 S.E.2d 646 (1991). Also, this Court has long held that, "A statute is presumed to operate prospectively unless the intent that it shall operate retroactively is clearly expressed by its terms or is necessarily implied from the language of the statute." Syllabus Point 3, *Shanholtz v. Monongahela Power Co.,* 165 W.Va. 305, 270 S.E.2d 178 (1980). *See also Public Citizen, Inc. v. First Nat. Bank in Fairmont,* 198 W.Va. 329, 335, 480 S.E.2d 538, 544 (1996) (a deeply rooted principle in our jurisprudence is that absent some clear signal from the Legislature, a statute will not apply retroactively). Based on the meeting minutes, it is clear that the Jefferson County Commission intended that the Ordinance as amended on April 8, 2005, be applied prospectively. Consequently, those amendments were not applicable to FAF's application for a permit.

We reject the BZA's assertion that applications pending when the amended Ordinance took effect were only "grandfathered" with respect to the LESA score requirements. This argument is not supported by the meeting minutes of the Jefferson County Commission or any provision in either the former or amended Ordinance. In sum, we find that the Ordinance as amended on April 8, 2005, should not have been applied to the request for a permit submitted by FAF on June 23, 2004. Because the former Ordinance was applicable, the BZA did not have the authority to decide whether to issue or deny the permit. Consequently, its decision to deny FAF the permit is void as a matter of law and the decision of the circuit court must be reversed.

Upon further review of the record in this case and the former Ordinance, we find that FAF is entitled to the permit. Pursuant to Section 7.3 of the former Ordinance, a developer seeking a permit was first required to submit an application. Upon receipt of the application, the Planning and Zoning Staff

was required to complete the LESA evaluation. If the proposed development received a passing LESA score, a compatibility assessment meeting was scheduled. The purpose of the meeting was set forth in Section 7.6(a) of the former Ordinance as follows:

The Compatibility Assessment Meeting allows the adjacent and confronting property owners and all other interested parties the opportunity to hear the developer's presentation and proposal. In his presentation he will address the compatibility of his project to the existing areas adjacent to the site . . . . Any discussion shall be limited to the proposal's compatibility as presented rather than whether the site should be developed by any other use.

Thereafter, Section 7.6(d) of the former Ordinance directed the Planning and Zoning Staff to prepare a "report of the developer's proposal, the agreed upon conditions, and other pertinent data" and then schedule a public hearing. According to Section 7.6(e) of the former Ordinance, the purpose of the public hearing was to "hear the staff's report of the issues and concerns raised at the Compatibility Meeting." Following the public hearing, Section 7.6(g) of the former Ordinance stated that the permit shall be issued, issued with conditions, or denied.

 Having carefully reviewed the former Ordinance, we agree with FAF that other than the LESA scoring requirements, there was no specific substantive criterion governing the decision to deny or issue the permit. As discussed above, FAF received a successful LESA score, and the compatibility assessment meeting was conducted. At the meeting, various members of the public appeared and made 106 demands of FAF. FAF agreed to thirty-nine requests but refused to comply with the other demands some of which were clearly unreasonable. For example, one request was that FAF be required to compensate the community in the amount of $400,000.00 per year for the ecological loss of trees. Another request was that FAF be required to post a $500,000.00 bond to provide water services for well failures on properties within a one-mile radius of the FAF property.

A public hearing was held on July 26, 2005, to deal with the unresolved issues from the compatibility assessment meeting. FAF submitted substantial evidence to support its subdivision development at that time. In particular, FAF presented expert reports to show that FAF traffic would not create a significant amount of peak traffic impact on any of the four studied intersections and further, that the level of service for the intersections involved fully complied with the terms of the Subdivision Ordinance. FAF also presented evidence that it was unlikely that its water system would interfere with the local wells and demonstrated that there were no sinkholes on its property. FAF further showed that the property is not historically significant;[10] that there are no previous recorded sites of archaeological significance on the property; and that the Phase 1 environmental report revealed nothing that could not be dealt with as the project progressed.

In contrast, the record shows that no evidence other than anecdotal experiences related by some members of the public was presented at the public hearing to contradict FAF's traffic study. Anecdotal evidence and mere speculation and conjecture about potential traffic problems is simply insufficient to overcome expert testimony. Also, with respect to the other unresolved issues which primarily concerned the construction and design of the development and the history of the property, the record shows that no evidence was presented refuting or contradicting that presented by FAF. In sum, FAF addressed all the unresolved issues at the public hearing and its evidence was unrefuted. Accordingly, based upon all the above, we find that FAF complied with every requirement of the former Ordinance and therefore, is entitled to the permit.

In reaching our decision in this case, we were certainly mindful that many members of the public are concerned about the dangers of over development and the strain placed on local resources by an expanding population. However, zoning ordinances must be interpreted to balance the rights of individual property owners with the needs of the community. Such ordinances can only be effective if they are applied in an even-handed manner with the utmost adherence to the procedural rights of all parties. In this case, the BZA simply did not have the authority to reject FAF's application for a permit under the amended Ordinance because it was not in effect at the time the permit was requested. Furthermore, the evidence in the record shows that FAF satisfied all of the requirements necessary to obtain the permit. Consequently, we must reverse the decision of the circuit court which affirmed the BZA's decision and direct the Jefferson County Planning and Zoning Commission to issue the permit to FAF.[11]

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Jefferson County entered on September 18, 2006, is reversed. This matter is referred back to the Jefferson County Planning and Zoning Commission with directions to immediately issue the conditional use permit requested by FAF.

Reversed.

---

**10.** *See* note 4, *supra.*

**11.** Having found that the former Ordinance applied to FAF's request for a permit, we need not address the other issues presented by FAF in this appeal as they are moot because they concerned the BZA's application of the amended Ordinance. We also note that on February 29, 2008, FAF filed a motion to supplement the record with orders entered by the Circuit Court of Jefferson County on February 21, 2007, and February 26, 2008, in a separate civil action wherein it appears that the circuit court invalidated the April 8, 2005 amendments to the Ordinance. This Court has taken judicial notice of those orders but they were not relevant to our decision in this case and were not considered.