# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**SHENANDOAH PERSONAL COMMUNICATIONS, LLC,**
**Petitioner Below, Petitioner**

**FILED**
**June 12, 2024**
ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.)    No. 23-ICA-235    (Cir. Ct. Kanawha Cnty. No. 21-AA-38)**

**MATTHEW IRBY, STATE TAX COMMISSIONER**
**OF WEST VIRGINIA,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Shenandoah Personal Communications, LLC ("Shentel") appeals a May 3, 2023, order of the Circuit Court of Kanawha County denying Shentel's appeal of a decision by the West Virginia Office of Tax Appeals ("OTA") upholding a denial of Shentel's use tax refund claim by Respondent Matthew Irby, State Tax Commissioner of West Virginia ("Tax Commissioner"). The Tax Commissioner filed a timely response. Shentel filed a reply.[1]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' oral and written arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

## Factual and Procedural Background

The facts of this case are largely undisputed. Shentel is a limited liability company, headquartered in Edinburg, Virginia, engaging in business in West Virginia and several other states. Throughout West Virginia, Shentel and its affiliates own and maintain wireless network equipment. As a part of a contractual affiliate agreement with Sprint, Shentel's physical network infrastructure is utilized by Sprint's spectrum to provide wireless telecommunication services in West Virginia. Sprint's wireless signal is accessed and transmitted throughout West Virginia via the equipment infrastructure owned and provided by Shentel. If a customer makes a call outside of the area where Shentel owns towers, those

---

[1] Petitioner Shentel is represented by Alexander Macia, Esq., Paul Papadopoulos, Esq., and Chelsea Thompson, Esq. Respondent Tax Commissioner is represented by Patrick Morrisey, Esq., Sean Whelan, Esq., and Cassandra L. Means-Moore, Esq.

calls are supported by the nearest tower able to accept calls from Sprint's customers. Shentel also has a subsidiary business, Shentel Mobile, LLC, which owns the telecommunication towers that hold Shentel's transmission equipment. However, because Shentel is not its own wireless company, it relies upon its technical alliance with Sprint to make its towers capable of handling such phone calls.

In addition, Shentel also owns and operates Sprint-branded retail stores in several locations in West Virginia at which it sells, to the public, devices like mobile phones, tablets, related supplies, and accessories along with subscriptions to Sprint's nationwide wireless network.

The underlying facts and issues center on Shentel's purchase of approximately thirty retail locations formerly operated by nTelos in West Virginia.[2] In April of 2017, a letter was sent to former nTelos customers informing them that customers with an iPhone 5c or newer would be able to keep their device, but all other devices would be replaced at no additional cost to the customer. Without a new cellphone, some existing nTelos customers would not have been able to continue wireless service to which they had subscribed. No accessories for the mobile phones were offered and the inventory to choose a new phone was limited. The offer was not available to the general public or to existing customers that already owned a compatible device. When these phones were provided free-of-charge, the customers were not charged sales tax.[3] Instead, Shentel paid the use tax[4] on its purchase of these phones, which we will refer to as the "Free Mobile Phones" for purposes of this memorandum decision.[5]

---

[2] nTelos was a wireless telecommunications company operating retail stores within West Virginia.

[3] The West Virginia Consumers Sales and Service Tax ("sales tax") is generally imposed by article 15, Chapter 11 of the West Virginia Code.

[4] The West Virginia Use Tax ("use tax") is generally imposed by article 15A, Chapter 11 of the West Virginia Code. *See also* W. Va. Code § 11-15B-1 *et seq.* Sometimes the sales tax and use tax in combination are referenced as the "sales and use tax" in this decision.

[5] At oral argument, Shentel conceded that the unusual facts pertaining to its purchase of the Free Mobile Phones and delivery to customers without any charge and in connection with a large business transaction are unlikely to recur. In the ordinary course of business and outside the context of this unusual business transaction, Shentel sells mobile devices and supplies to customers at its retail stores and, as a vendor, asserts the purchase-for-resale exemption when it buys inventory and collects and remits sales tax to the Tax Commissioner when the inventory is sold unless the ultimate customer properly asserts its own exemption from sales tax.

2

On June 17, 2019, Shentel filed with the Tax Commissioner a refund claim for $914,404.58 for the period between May 1, 2016, and December 31, 2017. The Tax Commissioner issued a July 16, 2019, notice of denial of Shentel's claim based upon its determination that, "[h]andsets given away to customers are subject to use tax." Shentel appealed this denial to OTA.

OTA held an evidentiary hearing on October 1, 2020, and entered an Amended Final Decision on June 1, 2021, ultimately affirming the Tax Commissioner's denial of Shentel's refund request. In its administrative decision, OTA examined the two exemptions asserted by Shentel, either of which would, if properly applicable to the transactions at issue, render the refund claim valid. First, Shentel argued that its purchase and use of the Free Mobile Phones within its business was exempt from sales and use tax pursuant to the "direct use" exemption afforded to firms engaged in the business activity of "communication." Second, Shentel argued that its purchase of the Free Mobile Phones and transfer of the Free Mobile Phones to customers was exempt from sales and use tax due to the purchase-for-resale exemption.

Ultimately, OTA found that Shentel's purchase of the Free Mobile Phones was not exempt under the direct use exemption insofar as the Free Mobile Phones, considering the specific evidence presented, were used by Shentel for *marketing* purposes, a use that is categorically disqualified from the direct use exemption. As to whether the purchase of the Free Mobile Phones entitled Shentel to assert the purchase-for-resale exemption, after reviewing various authorities and the unique facts of the case, OTA concluded that the Free Mobile Phones were not purchased for resale because the Free Mobile Phones were not, in fact, resold.

Shentel appealed OTA's ruling to the Circuit Court of Kanawha County on July 1, 2021. On May 3, 2023, the circuit court entered the order currently on appeal, affirming OTA's ruling below. First, the circuit court found that Shentel did not directly use the Free Mobile Phones as part of its communication business. The circuit court noted that OTA properly distinguished between Shentel's technical communications business activity, on one hand, and Shentel's sales activities (including sales of mobile devices and subscriptions to Sprint's nationwide wireless network), on the other hand. The circuit court found that the act of giving away the Free Mobile Phones was a retail marketing use that does not qualify for the direct use exemption. Next, the circuit court agreed with OTA that Shentel did not qualify for the purchase-for-resale exemption because it did not in fact resell the Free Mobile Phones to the qualifying former nTelos customers.

This appeal followed the circuit court's order.

**Discussion**

The standard of review applicable to this appeal is as follows:

In an administrative appeal from the decision of the West Virginia Office of Tax Appeals, this Court will review the final order of the circuit court pursuant to the standards of review in the State Administrative Procedures Act set forth in W. Va. Code § 29A-5-4(g) [2021]. Findings of fact of the administrative law judge will not be set aside or vacated unless clearly wrong, and, although administrative interpretation of State tax provisions will be afforded sound consideration, this Court will review questions of law *de novo.*

Syl. Pt. 1, *Griffith v. ConAgra Brands, Inc.*, 229 W. Va. 190, 728 S.E.2d 74 (2012); *accord Far Away Farm, LLC v. Jefferson Cnty. Bd. of Zoning Appeals*, 222 W. Va. 252, 256, 664 S.E.2d 137, 141 (2008) (per curiam) (quoting *Webb v. W. Va. Bd. of Med.*, 212 W. Va. 149, 155, 569 S.E.2d 225, 231 (2002) ("It is well-established that '[o]n appeal, this Court reviews the decisions of the circuit court under the same standard of judicial review that the lower court was required to apply to the decision of the administrative agency.'"); *W. Va. Dep't of Health and Human Res. v. Downs-Jamal*, No. 22-ICA-129, 2023 WL 4027502, at * 3 (W. Va. Ct. App. June 15, 2023) (memorandum decision) (applying the same standard of review as the circuit court upon our review of its order following an appeal of an administrative decision).

In turn, West Virginia Code § 29A-5-4(g) provides:

The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the agency;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

4

On appeal, Shentel asserts numerous assignments of error.[6] However, these assignments and accompanying arguments may be categorized as either relating to: (1) the direct use exemption or (2) the purchase-for-resale exemption. After a brief introduction, we will address these exemptions and their application to Shentel's purchase and use of the Free Mobile Phones separately, but for brevity we will combine consideration of these assignments of error as appropriate within the discussion of the two sales and use tax exemptions asserted by Shentel.

West Virginia imposes a sales tax broadly on, among other things, sales of tangible personal property and a use tax on the use of tangible personal property. *See* W. Va. Code § 11-15-3(a); W. Va. Code § 11-15A-2(a). The sales tax and use tax are complementary. W. Va. Code § 11-15A-1a(1). Sales tax exemptions are expressly incorporated into the use tax law. *See* W. Va. Code § 11-15A-3(a)(2). Accordingly, while this is a use tax refund matter, analysis of exemptions in the sales tax law is appropriate. Generally, the burden is squarely upon a taxpayer to prove an exemption from use tax. *See* W. Va. Code § 11-10-25(a); W. Va. Code § 11-15-6(a). Moreover, all sales and services are presumed to be subject to sales and use tax until the contrary is clearly established. *See* W. Va. Code § 11-15-6(b).

At the outset, Shentel argues this case involves a generally straightforward application of undisputed facts to the plain, ordinary meaning of settled law, emphasizing our *de novo* review of purely legal questions. Shentel however cites no published (or unpublished) West Virginia appellate authority supporting its view of application of the unique facts of this case to the West Virginia sales and use tax law, which has been on the books and imposed on taxpayers for decades. Moreover, Shentel's assignments of error and arguments generally fail to acknowledge the deferential standard of review afforded to OTA concerning fact finding, inferences, and the application of facts to the law considering

---

[6] Shentel subdivided its assignments of error into 10 separate components. Shentel asserts that the circuit court erred when it: (1) concluded that Shentel did not qualify for the direct use exemption; (2) concluded that Shentel's provision of the Free Mobile Phones constituted "retail sales" and did not constitute "communication" for direct use exemption purposes; (3) concluded that Shentel's purchase of the Free Mobile Phones "was not a direct use of the phones" for direct use exemption purposes; (4) concluded that Shentel's purchase of the Free Mobile Phones was "incidental, and not integral, to its communications business"; (5) concluded Shentel's purchase of the Free Mobile Phones and providing them to a certain subset of customers constituted "marketing" for direct use exemption purposes; (6) concluded that Shentel did not qualify for the purchase-for-resale exemption; (7) claimed that Shentel "admits that there was no sale" of Free Mobile Phones to the recipients; (8) relied upon a Washington Court of Appeals case to reach its conclusion; (9) disregarded the "description of a 'sale'" in the sales and use tax Legislative Rule; and (10) made a finding of fact that Shentel provided the Free Mobile Phones "as an inducement to stay with [Shentel] or Sprint" and disregarded other testimony.

5

the presumption of taxability and the express burden placed on taxpayers to prove the application of an exemption to the facts at hand.

## Direct Use Exemption

First, Shentel argues that the circuit court erred when it found that the Free Mobile Phones Shentel purchased did not qualify for the direct use exemption because Shentel is engaged in communication activity, and the Free Mobile Phones were directly used or consumed in Shentel's communication activity pursuant to West Virginia Code § 11-15-9(b)(2).[7] Both OTA and the circuit court found that the direct use exemption did not apply to Shentel's purchase of the Free Mobile Phones, and we agree.

The Legislature enacted the direct use exemption in 1987 to substantially narrow sales and use tax exemptions which were previously afforded to various types of businesses and to subject many formerly exempt purchases by businesses to the sales and use tax.[8] West Virginia Code § 11-15-9(b)(2) allows a refundable exemption for "[s]ales of services, machinery, supplies, and materials[9] *directly used or consumed* in the activities of… communication…, in the [communication] business[] …." *Id.* (emphasis added). The term *communication* is further defined by statute and in legislative rule.[10]

---

[7] Seven of Shentel's assignments of error relate to the direct use exemption. Instead of considering each of these separately, we focus on how the facts as found by OTA apply to the sales and use tax law to determine whether Shentel met its burden to prove that its purchase and use of the Free Mobile Phones qualified for the direct use exemption based on Shentel's communication business activities. We have consolidated assignments of error and reordered them in accord with the Court's analysis. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012); *Harlow v. E. Electric., LLC*, 245 W. Va. 188, 195 n.25, 858 S.E.2d 445, 452 n.25 (2021).

[8] *See* Tax Reform Act of 1987, ch. 131, 1987 W. Va. Acts 743 (codified at W. Va. Code § 11-15-9 (1987)).

[9] Reflecting the Legislature's intended restrictive application of the direct use exemption, the statute employs the phrase "machinery, supplies, and materials" and not the much broader term "tangible personal property" employed throughout the sales and use tax law.

[10] West Virginia Code § 11-15-2(b)(2) provides:

"Communication" means all telephone, radio, light, light wave, radio telephone, telegraph and other communication or means of communication, whether used for voice communication, computer data transmission or other

The Legislature defined what constitutes *directly used or consumed* in the specified activities, including communications. *See* W. Va. Code § 11-15-2(b)(4). *Directly used or consumed* in communications "means used or consumed in [communications] or operations which constitute an integral and essential part of [communications], as contrasted with and distinguished from those activities or operations which are simply incidental, convenient or remote to [communications]." *Id.* The statute gives an exclusive list of fourteen uses of machinery, supplies and materials or consumption of services constituting *direct use*. *See* W. Va. Code § 11-15-2(b)(4)(A). The statute further gives an open-ended list of uses of property that expressly do *not* constitute *direct use* and thereby do not qualify for the exemption. *See* W. Va. Code § 11-15-2(b)(4)(B).[11] Included among nonqualifying uses of services, machinery, supplies, and materials is "marketing." W. Va. Code § 11-15-2(b)(4)(B)(v).

OTA determined, based upon the evidence presented, that Shentel is engaged, in part, in the activity of communication as a business and that Shentel is also engaged in the business of sales at retail stores of mobile devices and accessories and subscriptions to mobile telecommunications plans to various customers through the Sprint network. OTA found that Shentel itself did not use or consume the Free Mobile Phones (as the Free Mobile Phones were transferred to end-user customers to retain them as Sprint network subscribers). OTA further found that the Free Mobile Phones were not properly considered machinery, supplies, and materials, the use of which is necessarily "integral and essential to the Shentel's communication business activity."

Furthermore, OTA found that to the extent the Free Mobile Phones were used by Shentel, they were effectively used in *marketing*, an endeavor that expressly falls outside the direct use exemption as determined by the Legislature. Shentel's witness testified that the purpose of giving away the Free Mobile Phones was to retain former nTelos customers and extend their relationship with Sprint's nationwide network, which OTA found to be a marketing activity. OTA's findings were supported by the testimony of the Tax Commissioner and Shentel's own witness.

To adopt Shentel's argument, we must find that the circuit court committed reversible error when it failed to find that OTA's decision rejecting Shentel's claim that the direct use exemption applied to Shentel's purchase and use of the Free Mobile Phones was clear error or an abuse of discretion. Combining the taxpayer's burden of establishing

___

encoded symbolic information transfers and includes commercial broadcast radio, commercial broadcast television and cable television.

[11] The qualifying direct use list in subpart (4)(A) is prefaced by the phrase "include only," whereas the disqualifying list in subpart (4)(B) is prefaced by the phrase "include[] but are not limited to."

the applicability of an exemption with the statutory language restricting the application of the direct use exemption, we must apply our deferential standard of review concerning factual findings and inferences drawn by OTA. We agree with the circuit court and decline to find that OTA was clearly erroneous in its findings of facts or that OTA's application of the facts to the law concerning the direct use exemption constitutes a reversible abuse of discretion. Accordingly, we affirm the circuit court's order and uphold OTA's determination that the direct use exemption did not apply to Shentel's purchase and use of the Free Mobile Phones in the unique circumstances of this case.

### Purchase-For-Resale Exemption

Second, Shentel argues that the circuit court erred when it did not find the purchase-for-resale exemption applied to the purchase by Shentel of the Free Mobile Phones combined with Shentel's ultimate transfer of the Free Mobile Phones to certain select customers. OTA (and the circuit court) found that the purchase-for-resale exemption did not apply to Shentel's purchase of the Free Mobile Phones. Upon review, we agree.

West Virginia Code § 11-15-9(a)(9) generally exempts "[s]ales of tangible personal property to a person for *the purpose of resale* in the form of tangible personal property…." (emphasis added). The exemption is designed to avoid double taxation by not imposing the sales tax at the supplier-vendor level where the sales tax is borne by the ultimate customer. *See* W. Va. Code 11-15-10. Normally, in a purchase-for-resale scenario, the ultimate resale is itself a sale subject to sales tax, and sales tax is collected only once. Moreover, under West Virginia sales and use tax law, the vendor-purchaser (who intends to resell its stock of inventory) typically would not pay its supplier sales or use tax (and seek a refund), but rather would exercise its right to provide its supplier an exemption certificate asserting the purchase-for-resale exemption.

Retailers, like Shentel, follow this practice when buying mobile devices and supplies for their inventory in the ordinary course of business to resell inventory to customers at their retail stores. In the unique facts surrounding the Free Mobile Phones presented in this case, Shentel did not assert the purchase-for-resale exemption when it purchased the Free Mobile Phones. Instead, Shentel waited two-and-a-half years to file a refund claim on use tax paid on the purchase and use of the Free Mobile Phones it now claims it purchased for the purpose of "resale."

Neither the statute nor the Legislative Rule define the term "resale" used in West Virginia Code § 11-15-9(a)(9). West Virginia Code § 11-15-2(b)(17) defines the term "sale" to include "any transfer of the possession or ownership of tangible personal property…for a consideration." The use tax (which Shentel paid on its purchase of the Free Mobile Phones) is generally imposed on the "purchase price" of tangible personal property and taxable services. W. Va. Code § 11-15A-2. The sales tax is generally imposed on the "sales price." *See, e.g.,* W. Va. Code § 11-15-3. The sales and use tax Legislative Rule uses

8

these phrases (sales price and purchase price) interchangeably and defines the phrase "purchase price" as "the total amount for which tangible personal property or a taxable service is sold, valued in money, whether paid in money or otherwise." W. Va. Code R. § 110-15-2.68.

Shentel argues on appeal that the subsequent transfer of physical possession of the Free Mobile Phones to qualifying customers was, for purposes of sales and use tax, a resale and that Shentel's purpose in acquiring the Free Mobile Phones was to resell them (without charge) to qualifying customers. Shentel now argues that there was consideration paid to or received by Shentel from its customers upon their receipt of the Free Mobile Phones, but its actions surrounding the delivery of the Free Mobile Phones and the testimony in the record cut against Shentel's argument that separate consideration was provided by customers in exchange for the Free Mobile Phones. Moreover, Shentel cites to no evidence that it attempted at any point to apportion or allocate[12] any of the amounts (or "value in money") it received from the customer-recipients of the Free Mobile Phones (as part of the subscription price paid or otherwise) to attempt to collect sales and use tax from its customers on the "consideration" paid as part of the "resale" of the Free Mobile Phones. Nor was there evidence that customers who received Free Mobile Phones paid more for subscriptions to Sprint wireless services than customers who did not receive Free Mobile Phones.

OTA found, based upon the testimony of Shentel's witness,[13] that when Shentel purchased the Free Mobile Phones, the phones were *not*, in fact, intended to be *resold*. OTA found that the purpose of Shentel's purchase of the Free Mobile Phones was to retain customers in light of a unique retail store business acquisition. OTA noted that Shentel did not attempt to collect any sales or use tax from its customers receiving the Free Mobile Phones in connection with the purported "resale" transaction. In this case, there is no evidence that Shentel made any attempt to determine the value of consideration received from customers attributable to delivery of the Free Mobile Phones purportedly resold. Shentel did not collect sales and use tax from its customers (as it would have been required

---

[12] *See generally*, W. Va. Code § 11-15-14 (requiring that vendors engaged in business that is taxable in part and exempt in part "shall keep records" to show the separate transactions). In this case, if there were a resale of the Free Mobile Phones, Shentel would have been required to keep books to separate the nonexempt resales of Free Mobile Phones from *wireless service* subscription fees (which are generally excluded from sales tax by West Virginia Code § 11-15-8, but only to the extent the service or the manner in which it is delivered is subject to regulation by the public service commission). Shentel does not argue that the "consideration" received from customers from its delivery of Free Mobile Phones is excluded from sales and use tax under West Virginia Code § 11-15-8.

[13] The witness testified that customers received the Free Mobile Phones "for free" and "were not paying for the phone."

to do absent an exemption applicable to its customer). There is no indication Shentel considered a value to have been "otherwise received" as consideration in connection with its purported sale.

To adopt Shentel's argument, we must find that the circuit court committed error when it failed to find that OTA's decision—rejecting Shentel's assertion that it purchased the Free Mobile Phones for the purpose of resale—was clearly erroneous or was an abuse of discretion. Again, we must acknowledge the taxpayer's burden of establishing the applicability of an exemption. Applying our deferential standard of review concerning findings and inferences drawn by OTA in light of the record below, we agree with the circuit court and decline to find that OTA's decision was clearly erroneous in its findings of fact or that OTA's application of the facts to the law concerning the purchase-for-resale exemption constitutes a reversible abuse of discretion. Accordingly, we affirm the circuit court's order and uphold OTA's determination that the purchase-for-resale exemption did not apply to Shentel's purchase and use of the Free Mobile Phones in the unique circumstances of this case.

Because we find no prejudicial error in the circuit court's May 3, 2023, order, we affirm.

Affirmed.

**ISSUED:** June 12, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear