**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Andrew C. Smith,**
**Petitioner Below, Petitioner**

**FILED**

**November 12, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)  No. 13-0280** (Monongalia County 12-C-411)

**City of Morgantown Board of Zoning Appeals,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Andrew C. Smith, appearing *pro se*, appeals the order of the Circuit Court of Monongalia County, entered February 28, 2013, upholding two decisions of the City of Morgantown Board of Zoning Appeals.[1] Respondent City of Morgantown Board of Zoning Appeals ("BZA"), by counsel Stephen R. Fanok, filed a summary response. Petitioner filed a reply.[2]

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner owns business property at 426 Drummond Street, Morgantown, West Virginia. On June 28, 2012, petitioner filed a petition for a writ of certiorari that challenged two May 16, 2012 decisions of the BZA. In each decision, the BZA granted petitioner's requested variance, but

---

[1] Petitioner attempted an earlier appeal from the Board of Zoning Appeals' decisions, however, the circuit court dismissed that appeal for procedural deficiencies. While petitioner appealed the dismissal to this Court, he also corrected the procedural errors and re-filed his appeal in the instant case. Accordingly, the Court dismissed as moot the earlier appeal from the circuit court as the procedural issues were no longer alive between the parties. *See Smith v. City of Morgantown*, No. 12-0793, 2013 WL 3388231 (W.Va. Supreme Court, July 8, 2013) (memorandum decision).

[2] On September 5, 2013, petitioner also filed a motion to supplement his appendix with photos of his property taken during the week of August 5, 2013. Inasmuch as these photos were not before the BZA, this Court denies the motion to supplement. *See* W.Va. Code § 8A-9-6(b) ("[N]o such review [of a BZA decision] shall be by trial *de novo*.").

1

only in the manner recommended by the Morgantown City Planner.[3]

On July 6, 2012, petitioner moved the circuit court to take testimony to supplement the evidence pursuant to West Virginia Code § 8A-9-6(b). The BZA responded that West Virginia Code § 8A-9-6 provided that a zoning appeal should ordinarily be decided on facts set forth in the petition and the return, and that supplemental testimony should be allowed only if the circuit court determines it is necessary.

The circuit court held a hearing on petitioner's motion on October 18, 2012. By an order entered on October 22, 2012, the circuit court ruled, in accordance with West Virginia Code § 8A-9-6, that it would allow supplemental testimony only if it determined such testimony was necessary. The circuit court further ruled that (a) it was granting the writ of certiorari and directing the BZA to file a return to the writ by October 30, 2012, and (b) that petitioner's reply would be due by November 19, 2012.

On January 14, 2013, the circuit held a final hearing at which the parties presented oral argument. In an order entered February 28, 2013, the circuit court addressed petitioner's grounds for reversing the BZA's two decisions regarding his requested variances: (1) whether the grading permit petitioner obtained from the City of Morgantown ("City") allowed him to install a new asphalt parking lot; (2) whether BZA Chairperson Bossio had a conflict of interest that required him to abstain from participating in deliberations on petitioner's requested variances; (3) whether the BZA violated its by-laws by not voting on petitioner's requested variances within 120 days of its initial public hearing on the variances; (4) whether BZA Member Shaffer, after being absent from the December 11, 2011, hearing, violated the BZA's by-laws by failing to state on the record that he had read the city planning department's staff report and was familiar with it, prior to voting on the variances at the May 16, 2012, hearing; (5) whether either petitioner or his engineer received a memorandum from the city planner dated September 17, 2010, that summarized the zoning requirements that petitioner would need to address at his property; (6) whether the City's zoning requirements conflicted with the "access permit" petitioner obtained from the West Virginia Division of Highways; (7) whether the city planning department properly interpreted §§ 1341.07 and 1367.02(B) of the City's zoning ordinance; and (8) whether the City violated § 1383.06 of its zoning ordinance by not notifying affected property owners of petitioner's appeal of the two decisions of the BZA on his requested variances. After addressing petitioner's arguments in support of his appeal, the circuit concluded that (a) the BZA did not apply any erroneous principles of law, (b) did not make any plainly wrong findings, and (c) did not act beyond its jurisdiction. Accordingly, the circuit court upheld the BZA's two decisions that granted petitioner's requested variances, but only in the manner recommended by the city planner.

Petitioner now appeals the circuit court's February 28, 2013 order that upheld the BZA's

---

[3] On petitioner's two requested variances, the city planner's recommendations were as follows: (1) that the BZA grant a one-foot variance from the requirement that sidewalks be six feet in width, beginning at and measured from the back of the street curb; and (2) that the BZA grant a five-foot variance from the ten-foot minimum requirement for a landscape buffer, measured from the back of the sidewalk to a concrete curb at the back of the concrete parking lot to protect plant materials.

May 16, 2012 decisions on petitioner's requested variances.[4] It is well-established that we review the decision of the circuit court "under the same standard of judicial review that the lower court was required to apply to the decision of the administrative agency." *Webb v. West Virginia Board of Medicine,* 212 W.Va. 149, 155, 569 S.E.2d 225, 231 (2002). With respect to the decisions of the BZA, there is a presumption that the BZA acted correctly and "a reviewing court should reverse the administrative decision [only] where the board has applied an erroneous principle of law, was plainly wrong in its factual findings, or has acted beyond its jurisdiction." Syl. Pt. 1, *Far Away Farm, LLC, v. Jefferson County Board of Zoning Appeals*, 222 W.Va. 252, 664 S.E.2d 137 (2008) (quoting Syl. Pt. 5, *Wolfe v. Forbes,* 159 W.Va. 34, 217 S.E.2d 899 (1975)).

On appeal, petitioner raises all but one of the same grounds the circuit court discussed in its order entered February 28, 2013. Petitioner does not raise the correct interpretation of §§ 1341.07 and 1367.02(B) of the City's zoning ordinance. However, petitioner also raises two additional issues that were not addressed by the circuit court's February 28, 2013 order.

This Court will now address the two issues that were not refuted by the February 28, 2013 order. First, in a single-sentence argument petitioner first makes in his reply, petitioner asserts that he was not allowed to have "complete testimony" in this case. We note that this issue was addressed by the circuit court in its October 22, 2012 order where the court ruled that whether it took supplemental testimony was solely discretionary pursuant to West Virginia Code § 8A-9-6. West Virginia Code § 8A-9-6(b) further provides that "no such review [of a BZA decision] shall be by trial de novo." Therefore, this Court concludes that this issue is without merit.

Second, in another argument petitioner makes first in his reply, petitioner complains that the circuit court's February 28, 2013 order was prepared by opposing counsel. We have stated that "[a]s an appellate court, we concern ourselves not with who prepared the findings for the circuit court, but with whether the findings adopted by the circuit court accurately reflect the existing law and the trial record." *State ex rel. Cooper v . Caperton*, 196 W.Va. 208, 214, 470 S.E.2d 162, 168 (1996). This Court finds that the twenty-three page February 28, 2013 order was very thorough and more than adequately refuted the many reasons petitioner alleged in support of reversing the BZA's decisions on his requested variances. Therefore, this Court concludes that this issue is also without merit.

The respondent BZA addresses all the issues petitioner raised in his initial brief and argues that the circuit court did not err in upholding the BZA's May 16, 2012 decisions. Having reviewed the circuit court's "Order," entered February 28, 2013, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error remaining in this appeal.[5] The Clerk is directed to attach a copy of the circuit court's order to this memorandum

---

[4] On April 4, 2013, the circuit court issued a stay of its February 28, 2013 order pending the outcome of this appeal because the BZA did not object to a stay being granted.

[5] Petitioner makes a third argument in his reply to which the respondent BZA, being unaware of the issue, could not respond; however, the argument, that the City violated § 1383.06 of its zoning ordinance by not notifying affected property owners of petitioner's appeal of the

decision.

For the foregoing reasons, we find no error in the decision of the Circuit Court of Monongalia County and affirm its February 28, 2013 order upholding the BZA's May 16, 2012 decisions that granted petitioner's requested variances, but only in the manner recommended by the city planner.

Affirmed.

**ISSUED:**   November 12, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

BZA's decisions, was addressed in the circuit court's February 28, 2013 order.

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

ANDREW C. SMITH,

      Petitioner,

v.                                       Civil Action No.: 12-C-411
                                       (Judge Phillip D. Gaujot)

MORGANTOWN BOARD OF ZONING APPEALS,

      Respondent.

## <u>ORDER</u>

On January 14, 2013, the Petitioner appeared Pro Se, and the City of Morgantown Board of Zoning Appeals (hereinafter "BZA") appeared by its attorney, Stephen R. Fanok, for a hearing on Petitioner's Petition For Writ of Certiorari appealing two May 17, 2012, written decisions by the BZA addressing Petitioner's V11-46 and V11-47 zoning variance requests.

The Petition was before the Court pursuant to §§8A-9-1 et. seq. of the Land Use Planning Act of the West Virginia Code. §§8A-9-3 through 8A-9-6 of the Land Use Planning Act set forth the action which may be taken by a Court when considering any such petition. Specifically, §8A-9-6 states that a Court may consider and determine the allegations of illegally and render a judgment on the facts set out in the petition and return to the writ of certiorari, and that if the Court deems it necessary it may take evidence to supplement the facts and evidence disclosed by the petition and return to the writ of certiorari. §8A-9-6 also states that no such review shall be by trial de novo.

Prior to January 14, 2013, both parties provided memorandum of law to the Court with the understanding that each would be afforded the opportunity to present oral argument to the Court at the January 14, 2013, hearing.

## FINDINGS OF FACT

1. Petitioner owns realty, within a PRO zoning district, located at 426 Drummond Street within the City of Morgantown.

2. On or about February 26, 2010, Petitioner filed with the City of Morgantown an application for a grading permit for 426 Drummond Street. In the application Petitioner described the work to be done as :

> Minor regrading (± 1.5' cut and/or fill) required
> for installation of new asphalt parking lot and
> storm water (management) drainage features.

On his application petitioner clearly marked that the application was for a grading permit only, and that the estimated value of the grading work to be done was $6,500.00.

3. Petitioner's grading permit application was reviewed by the City's Engineering Department, as are all grading applications filed with the City, and after the Engineering Department signed off on the application, the City issued a grading permit to the Petitioner on April 23, 2010.

4. On or about September 15, 2010, City Administration received a complaint that the entire front yard of 426 Drummond Street had been covered with gravel. As a result, the City's Planning and Zoning Staff visited the site. This was the first instance that the City Planning and Zoning Staff was made aware of Petitioner's work on the site.

5. After visiting the site, City Planner, Chris Fletcher, immediately notified Petitioner and/or Petitioner's agent, Scott Krabill, that it appeared, from viewing the large gravel parking lot area, that Petitioner had constructed between the lot's structure and Drummond Street, that the

2

site would not comply with either Article 1367's Parking Lot Landscaping requirements or §1341.07's sidewalk performance requirements of the City's zoning ordinance.

6. §1367.08(C) "Parking Lot Landscaping Requirement"of the City's Zoning Ordinance, and which is applicable to properties within the City's PRO zoning district, provides:

> (C) Development with Parking Located Between Building and Street. If any parking is located between the street and the building line, the following shall apply:

> (1) A ten-foot wide buffer shall be provided for the length of any parking area abutting the street. The buffer area shall contain at least one (1) two inch (2") caliper trees for every twenty (20) feet and at least three (3) shrubs of at least three (3) gallons in size clustered between each two (2) trees.

7. §1341.07(I) of the City's Zoning Ordinance also applies to PRO zoning districts and states:

> Sidewalks shall be constructed along the frontage of a lot upon which a use is to be constructed. New sidewalks shall be at least six (6) feet wide, or the same width as an existing but incomplete sidewalk along the same side of the street.

8. The record of BZA proceedings in this matter contains copies of a series of September 10, 2010, emails between City Planner Fletcher and Petitioner in which the City Planner informed Petitioner that the City permit in Petitioner's possession did not cover the paving of the parking lot and that Petitioner should not complete any additional work at the 426 Drummond Street site until his current permit had been amended, or another permit issued to him which would specifically address the design, layout, and landscaping of a parking lot area. In a follow up email on that date addressed to both the City Planner and Petitioner's engineer, Scott Krabill, Petitioner stated the following:

> "Scott- call or email Chris about the location - you know

3

I was paving at that location so I don't understand about
the paving not on the permit - that should have been done -
in the permit you charged me to get done - you even helped
me - with paving bids - if we need a new permit to pave -
I will need you to go get that for me and make that right
for me asap - if applicable, but again I thought that was
covered in the work"

"Chris - since I have permit for REGRADE FOR ASPHALT
PARKING - I will keep moving on that front - as is
proper and allowed, as I can't slow down on that front if I
want to be able to pave the lot this year before year end
we are very close to complete on that front"

9. The record of BZA proceedings in this matter contains a copy of a September 17, 2010, memorandum from City Planner Fletcher to Petitioner's engineering consultant, Scott Krabill, which addresses numerous zoning issues pertaining to the 426 Drummond Street site including required landscaping buffers, minimum parking, dumpster locations and sidewalk construction requirements. The BZA record includes testimony and a staff report by City Planner Fletcher in which Mr. Fletcher states that he provided the September 17, 2010, memorandum to Mr. Krabill at a September 17, 2010, meeting between the two individuals.

10. The record of BZA proceedings contains an affidavit, signed by Scott Krabill on February 29, 2012, which reads:

To the best of my knowledge and recollection, I did not receive the

Memorandum (see attached) dated September 17, 2010, regarding

EG 2010-3: 426 Drummond Street, Andrew Smith. It was not hand

delivered to me by Chris Fletcher, AICP, of the Planning Department.

11. On or about October 24, 2011, the City Planner's Office received a complaint that the parking area on Petitioner's realty had been paved with concrete and that Petitioner had failed

4

to include not only parking lot landscaping, but also, a sidewalk as required by the City's Zoning Ordinance. Upon inspection, the City Planner found that the parking lot had been paved with concrete and that Petitioner had failed to comply with the requirements of both §1367.08(C) and §1341.07(I).

12.    Petitioner has never received a building permit from the City of Morgantown authorizing him to do the concrete paving of the parking lot.

13.    On or about November 11, 2011, Petitioner filed two separate zoning variance requests for consideration by the BZA. The first was V11-46. In it, Petitioner asked that he be granted a variance from the City's Zoning Ordinance requirements as it relates to Article 1367.08(C) and minimum landscape buffers for parking lots that are constructed between a building and a street. In his variance request Petitioner asked that the required ten (10) foot wide landscaping buffer between the parking lot and the street be reduced to three (3) feet. The basis for Petitioner's variance request being that he thought that he had received prior approval from the City of Morgantown for all of the work performed on his realty, and that prior to doing the work in question he was not aware of or did not understand the planning and zoning requirements of the City of Morgantown. The Petitioner also filed zoning ordinance variance request V11-47. In it, Petitioner asked the BZA to waive the sidewalk construction requirements contained in §1341.07(I) of the City's Zoning Ordinance. The basis for Petitioner's variance request was that he believed that constructing a sidewalk would have a negative impact in the area, where currently no sidewalks exist. Petitioner also presented the argument that he did not perform new construction on the site, but only changed the use on site, that he should not be required to remove concrete which can be quite costly.

5

14. On December 21, 2011, the BZA held a public hearing at which time it considered variance requests V11-46 and V11-47. At that hearing, the City Planner, Chris Fletcher, presented the BZA with a Staff Report that thoroughly describes the history of both variance requests, the applicable zoning requirements, and the Planning Department's recommendation to the BZA. In that Staff Report, the City Planner provided a detailed discussion in which he provided justification for the following staff recommendation to the BZA:

1. That the Board grant a five-foot variance under V11-46 from the minimum ten-foot landscape buffer standard set forth in Article 1367.08(C);
2. That the Board grant a one-foot variance under V11-47 from the minimum six-foot sidewalk set forth in Article 1341.07(I);
3. That the desired design and development under the variances granted herein is a minimum five-foot sidewalk beginning at and measured from the back of the street curb; thence a minimum five-foot landscaping buffer measured from the back of said sidewalk to a concrete curb at the edge of the concrete parking lot to protect the plant materials.
4. That the Petitioner must make application for a building permit that includes all the work associated with the variance relief granted herein.
5. That said building permit application must include a Landscape Plan meeting the standards for same as set forth in Article 1367.04;
6. That the landscape plant materials must be approved by the Planning Division with consultation by the City Engineer to ensure safe visibility for exiting motorists prior to building permit issuance and installation; and,
7. That all work necessary to comply with the variances granted herein must be completed no later than June 30, 2012; failure to comply with said deadline will result in enforcement action provided in Article 1393 of the Planning and Zoning Code.

15. At the December 21, 2011, BZA meeting, the BZA asked Petitioner if he would like the two variance requests to be tabled to give the BZA time to make a site visit and to collect further needed information. Petitioner responded by stating that he wished to have the two requests tabled. The BZA then voted unanimously to table both variance requests. The onsite visit took place on January 17, 2012.

6

16.    By letter to the City Planner, Chris Fletcher, dated March 12, 2012, Petitioner for the first time asserted that BZA Chairperson, Bernie Bossio, had made Petitioner's variance requests "personal", that Mr. Bossio clearly had a "pecuniary interest" indirectly in the variance matter, that Mr. Bossio was biased, and was affected in a manner which might influence his vote, in the BZA matters at issue. Petitioner then asserted that since Mr. Bossio participated materially and directly in the December 21, 2011, BZA hearing and also attended a site visit at 426 Drummond Street on January 17, 2012, that Mr. Bossio should have the opportunity to respond in a statement to Petitioner's bias challenge and his response be immediately referred to the West Virginia Ethics Commission.

17.    On April 23, 2012, a formal complaint against Bernie Bossio participating in the BZA's deliberations of Petitioner's two variance requests, was filed by the Petitioner with the West Virginia Ethics Commission and it was assigned a case number of VCRB 2012-43. On June 13, 2012, the West Virginia Ethics Commission Probable Cause Review Board issued a Dismissal Order and closed the case. In its Order, the Review Board stated that the allegations contained in the complaint did not constitute a material violation of law upon which the Ethics Commission could properly act under the provisions contained in West Virginia Code §6B-1-1 et. seq..

18.    Due to continuance requests and other actions by the Petitioner, the BZA did not reconvene to address the two variance requests until May 16, 2012. At the beginning of the public hearing, BZA Chairperson, Bernie Bossio, read a written statement responding to the March 12, 2012, bias challenge asserted by Petitioner. In his detailed response Mr. Bossio first questioned why Petitioner had not presented his bias concerns to either him or the BZA prior to or at the December 21, 2011, BZA hearing on his variance requests, and why Petitioner's bias

7

challenge was submitted nearly three months after the December 21, 2011, hearing and nearly two months after the BZA's January 17, 2012, site visit. Mr. Bossio then addressed and rebutted each and every bias challenge presented by Petitioner. At the conclusion of his statement, Mr. Bossio stated that he was not biased, that he had no personal or pecuniary interest in Petitioner or 426 Drummond Street, and that he would not step down from participating in the matters before the BZA that evening pertaining to the Petitioner and his 426 Drummond Street property.

19. After Mr. Bossio's stated response, to Petitioner's bias allegations, the May 16, 2012, public hearing continued and Petitioner's V11-46 and V11-47 variance requests were addressed by the BZA. Members of the general public were present and expressed opposition to the BZA granting the two variance requests. The City Planner informed the BZA that his Staff Report and recommendations for the landscaping and sidewalk variances remained the same as presented on December 21, 2011. The BZA then addressed variance request V11-46 and issued the following Findings of Fact:

> **Finding of Fact #1-** There are exceptional or extraordinary circumstances or conditions applicable to this property or to the intended use, that generally do not apply to other properties or uses in the same vicinity, because:
>
>> It appears that the front setback of the existing structure that has been converted from a residential use to a professional services establishment use may not be deep enough to accommodate parking stalls, drive aisle, landscaping buffer and sidewalk standards set forth in the Planning and Zoning Code. However, the variances recommended by Staff appear to reasonably observe the spirit and intent of the Planning and Zoning Code in adequately buffering the parking lot from the street and neighboring properties and developing an infill sidewalk.
>
> **Finding of Fact #2-** The variance is necessary for the preservation and enjoyment of a substantial property right that is possessed by other properties in the same vicinity and zoning district, but which denied to this property, because:

8

Although landscape buffering and sidewalks that comply with the Planning and Zoning Code do not appear present along the PRO District portion of Drummond Street, the variances recommended by Staff appear necessary in implementing the legislative intent of ensuring pedestrian safety, enhancing the quality of development, and buffering parking lots from streets and other properties.

**Finding of Fact #3-** The granting of this variance will not be harmful to the public welfare and will not harm property of improvements in the vicinity and zoning district in which the subject property is located, because:

The variance recommended by Staff appear to significantly improve the extent for which relief was requested by the Petitioner thereby visually separating the Petitioner's use from the street and the residences to the north of the site and supporting the Planning and Zoning Code and policy recommendations of the Morgantown Pedestrian Safety Board and City Council to develop infill and network sidewalk facilities.

**Finding of Fact #4-** The granting of this variance will not alter the land-use characteristics of the vicinity and zoning district, or diminish the market value of adjacent properties, or increase traffic congestion on public streets, because:

The variances recommended by Staff appear to reasonably observe the spirit and intent of the Planning and Zoning Code in adequately buffering the parking lot from the street and neighboring residences and developing an infill sidewalk, which should enhance the value of public space and private property, the recommended variances cannot mitigate nor contribute to congestion present on the surrounding streets.

The BZA, on a 3 to 1 vote, granted a five (5) foot variance under V11-46 from the minimum ten (10) foot landscape buffer set forth in Section 1367.08(C) of the City's zoning ordinance.

The BZA then addressed variance request V11-47 and issued the following Findings of Fact:

**Finding of Fact #1-** There are exceptional or extraordinary circumstances or conditions applicable to this property or to the intended use that generally do not apply to other properties or uses in the same vicinity, because:

It appears that the front setback of the existing structure that has been converted from a residential use to a professional services

9

establishment use may not be deep enough to accommodate parking stalls, drive aisle, landscaping buffer and sidewalk standards set forth in the Planning and Zoning Code. However, the variances recommended by Staff appear to reasonably observe the spirit and intent of the Planning and Zoning Code in adequately buffering the parking lot from the street and neighboring properties and developing an infill sidewalk.

**Finding of Fact #2-** The variance is necessary for the preservation and enjoyment of a substantial property right that is possessed by other properties in the same vicinity and zoning district, but which denied to this property, because:

Although landscape buffering and sidewalks that comply with the Planning and Zoning Code do not appear present along the PRO District portion of Drummond Street, the variances recommended by Staff appear necessary in implementing the legislative intent of ensuring pedestrian safety, enhancing the quality of development, and buffering parking lots from streets and other properties.

**Finding of Fact #3-** The granting of this variance will not be harmful to the public welfare and will not harm property or improvements in the vicinity and zoning district in which the subject property is located, because:

The variances recommended by Staff appear to significantly improve the extent for which relief was requested by the Petitioner thereby visually separating the Petitioner's use from the street and the residences to the north of the site and supporting the Planning and Zoning Code and policy recommendations of the Morgantown Pedestrian Safety Board and City Council to develop infill and network facilities.

**Finding of Fact #4-** The granting of this variance will not alter the land-use characteristics of the vicinity and zoning district, or diminish the market value of adjacent properties, or increase traffic congestion on public streets, because:

The variances recommended by Staff appear to reasonably observe the spirit and intent of the Planning and Zoning Code in adequately buffering the parking lot from the street and neighboring residences and developing an infill sidewalk, which should enhance the value of public space and private property, the recommended variances cannot mitigate nor contribute to congestion present on the surrounding streets.

10

The BZA, on a 4 to 0 vote, granted a one (1) foot variance under V11-47 from the minimum six (6) foot sidewalk standard set forth in Section 1341.07(I) of the City's Zoning Ordinance.

20. By letter dated May 17, 2012, City Planner, Chris Fletcher sent Petitioner, on behalf of the BZA, a copy of the BZA's decision on each of the two variance requests.

21. BZA member, James Shaffer was absent from the December 21, 2011, BZA meeting, but did attend, participate in discussion, and vote on Petitioner's two variance matters at the May 16, 2012, BZA meeting. The Court has been presented with a June 11, 2012, affidavit prepared by James Shaffer, in which Mr. Shaffer states that although he was not present at the December 21, 2011, BZA meeting, he thoroughly reviewed the minutes and packet of that meeting prior to voting at the May 16, 2012, BZA meeting.

22. At its May 16, 2012, meeting, the BZA also addressed two separate administrative appeals filed by Petitioner and assigned BZA case numbers BA 12-01 and BA 12-02. BA 12-01 involved the interpretation of the applicability of Zoning Ordinance Article 1367 "Landscaping and Screening" to the reuse, development, and construction by the Petitioner at 426 Drummond Street. BA 12-02 involved the interpretation and applicability of §1341.07(I) concerning requisite sidewalks relating to the reuse, development, and construction by Petitioner at 426 Drummond Street. By letters dated May 17, 2012, the City Planner mailed copies of the BZA's May 16, 2012, decisions on each of the two appeals to Petitioner. Both decisions denied the interpretation and applicability of Article 1367 and §1341.07(I) being requested of the BZA by Petitioner. Furthermore, both of the May 17, 2012, letters to Petitioner contained language advising Petitioner that he had thirty (30) days to appeal each decision to the Circuit Court of Monongalia County. Petitioner did not appeal either decision of the BZA to the Circuit Court within the thirty

11

(30) day period.

23. On June 18, 2012, Petitioner filed his Petition for Writ of Certiorari regarding variance requests V11-46 and V11-47.

## CONCLUSIONS OF LAW

Petitioner has sought judicial relief with the filing of a Petition for Writ of Certiorari pursuant to §8A-9-1 of the West Virginia Land Use Planning Act; which is applicable to every decision or order of a board of zoning appeals. In his petition, Petitioner asks this Court to reverse the May 17, 2012, decisions of the BZA for a variety of reasons, all of which will be addressed in this decision. Prior to doing so, this Court believes it is necessary to address the applicable law.

Upon the appeal of all BZA decisions or orders, there is a legal presumption that the BZA acted correctly, and a reviewing court may not disturb a decision unless the BZA has applied an erroneous principle of law, was plainly wrong in its actual findings, or acted beyond its jurisdiction. Wolfe v. Forbes, 159, W.Va. 34, 217 S.E.2d 899 (1975); Harding v. Board of Zoning Appeals, 159 W.Va. 73, 219 S.E.2d 324 (1975); and DeCoals, Inc.v. Board of Zoning Appeals, 168 W.Va. 339, 284 S.E.2d (1981).

§8A-7-1 of the West Virginia Land Use Planning Act authorizes the governing body of a municipality to regulate land use within its jurisdiction, and municipalities derive general authority to adopt zoning ordinances from this code section. Wolfe v. Forbes, Supra.§§8A-8-1 et. seq. of the Land Use Planning Act define the powers and duties of a board of zoning appeals; and lastly, §§8A-9-1 et. seq. of the Land Use Planning Act address the appeal process when challenging any order or decision of a board of zoning appeals.

12

The first issue that this Court will address is Petitioner's argument that he had a permit issued by the City of Morgantown that authorized him to concrete the parking lot in question; thereby, waiving any requirement that he might later have to comply with municipal zoning regulations that would otherwise apply to his parking lot construction project. The record clearly establishes that the only permit the Petitioner ever received from the City of Morgantown, prior to constructing a concrete parking lot at 426 Drummond Street, was a grading permit. As written on its face, that grading permit only authorized Petitioner to perform minor regrading in preparation for the installation of a new asphalt parking lot. It did not authorize Petitioner to pave the lot.

The BZA record in this matter clearly establishes that Petitioner was informed by City officials, prior to his paving of the parking lot, that he must receive a building permit from the City of Morgantown and address applicable zoning ordinance requirements such as sidewalk construction and parking lot set back matters before he began paving the lot. Petitioner ignored the instructions and paved the lot. There is no basis in law for this Court to grandfather the work performed by Petitioner and to rule that his project is not subject to the City's Zoning requirements. The BZA had proper jurisdiction to hear and rule on the two variances in question.

The second issue raised by Petitioner is the participation of the BZA Chairperson, Bernie Bossio, in the BZA action regarding his two variance requests. Petitioner alleges that Mr. Bossio was biased against him and had a conflict of interest which required Mr. Bossio to abstain from participating in the BZA's deliberations and voting on matters pertaining to 426 Drummond Street.

The record clearly establishes that the question of whether Mr. Bossio acted unethically

13

when he participated in BZA proceedings pertaining to Petitioner's realty has already been decided. The West Virginia Ethics Commission has already responded to a formal complaint filed by Petitioner against Mr. Bossio. The complaint was filed on April 3, 2012, and identified as VCRB 2012-43. By Order dated June 13, 2012, the Ethics Commission's Probable Cause Review Board dismissed Petitioner's ethics complaint against Mr. Bossio.

Having reviewed Mr. Bossio's response to Petitioner's bias charges, as contained in the May 16, 2012, BZA minutes, this Court is of the opinion that Mr. Bossio rebutted each and every claim of bias made against him by Petitioner and that there is nothing to substantiate the charges Petitioner makes against him. In light of the Ethic Commission's June 13, 2012, order and the BZA record in this matter, this Court finds that Mr. Bossio's participation in the BZA matter at hand was proper and that his vote should not be disqualified.

Petitioner argues that the May 16, 2012, decisions of the BZA should be nullified by this Court due to the fact that the BZA violated §4(L) of its own bylaws by not voting on Petitioner's two variance requests within one hundred and twenty (120) days of its initial public hearing on the matter. The record indicates that the time period between the first BZA public hearing on the matter, which was held on December 21, 2011, and the May 16, 2012, hearing was one hundred and forty six (146) days. Having reviewed the BZA record, it is the opinion of this Court that Petitioner's actions contributed to the delay in rendering its two variance decisions. The record of the December 21, 2011, BZA hearing indicates that the BZA tabled the two variance requests at that meeting, at the request of the Petitioner, so that the BZA might have an opportunity to visit and view the 426 Drummond Street realty before it voted. The onsite viewing took place on January 17, 2012, the same day that Petitioner sent an email to the City Planner stating that *he*

14

*would be ready to attend the April or May, 2012, BZA meeting* regarding his two variance requests.

At its February 15, 2012, monthly meeting, the BZA requested that the City Planner notify the Petitioner that his two variance requests would be on the BZA's March 21, 2012, agenda. By letter dated February 16, 2012, the City Planner did in fact tell Petitioner that the BZA had decided to place his two variance requests on its March 21, 2012, agenda for action, and that Petitioner should appear at that time to speak on behalf of his variance petitions.

With that said, the question is why didn't the BZA render a decision on both variance requests at its March 21, 2012, meeting? The answer appears to be that Petitioner filed two separate administrative appeals with the BZA, and both were directly related to Petitioner's V11-46 and V11-47 variance requests. Both administrative appeals needed to be addressed by the BZA before the BZA could rule on Petitioner's two variance requests. The first administrative appeal was initiated by Petitioner on February 8, 2012, and the second was initiated by Petitioner on April 17, 2012. At its May 16, 2012, meeting the BZA first addressed and decided the two administrative appeals, and then addressed the two variance requests at issue.

Respondent argues that neither the West Virginia Land Use Planning Statute nor the City of Morgantown Zoning Ordinance place a time limit for BZA decisions; that the BZA's bylaws do not state what is to happen if the BZA does exceed one hundred and twenty (120) days in rendering a decision; that a court must look at the specific facts of each case, and thereafter determine the significance of the alleged infraction and its impact upon the BZA decision being appealed to the Court. This Court agrees with Respondent.

It is of the opinion of this Court that the BZA's delay in ruling resulted substantially from

15

Petitioner's actions, and that the BZA made a conscious good faith effort to decide the variance requests in a timely manner. It is also the opinion of this Court that any delay in deciding the two variance requests benefitted the Petitioner, who had already completed the construction of a concrete parking lot on the realty in question. For the foregoing reasons, this Court does not believe the alleged violation of a one hundred and twenty (120) day BZA bylaw rule is a basis to reverse the BZA's decisions in either V11-46 or V11-47.

Petitioner alleges that BZA member, James Shaffer, after being absent from the December 11, 2011, BZA hearing, violated §3(I) of the BZA's bylaws by not stating for the record that he had read the Staff Report pertaining to Petitioners variance request and was familiar with it, prior to voting at the May 16, 2012, BZA hearing. Although he does not state it in his petition, it would appear that Petitioner is arguing that if the Court finds the allegation to be true, the Court should reverse the May 16, 2012, variance decisions by the BZA. The Court would disagree and offer that it should first determine whether any such alleged bylaw violation by James Shaffer may have impacted the final outcome of either variance decision. The minutes of the May 16, 2012, BZA meeting state that four of the five BZA members were at the hearing; that the BZA vote on V11-46 was three (3) to one (1); and that the BZA vote on V11-47 was four (4) to zero (0). §4(F) of the BZA's bylaws states that *a majority of those members present and voting shall be required to take official action.* Based upon the reading of §4(F), it is clear that even if this Court were to nullify James Shaffer's vote, it would not affect the final outcome of the BZA's vote on either variance request. Within the BZA record on this matter, are the transcribed minutes of the May 16, 2012, meeting. Page 185 of the transcript indicates that on V11-46, BZA member Shaffer was one (1) of three (3) positive votes. Page 191 of those same minutes indicates that

16

BZA member Shaffer was one (1) of the four (4) positive votes on variance request V11-47. If one removes the Shaffer vote in V11-46, the outcome is a two (2) to one (1) vote and meets the requirements §4(F). Removing the Shaffer vote in V11-47 would result in a three (3) to zero (0)vote, which also meets the requirements of §4(F). Based upon the foregoing, it is the opinion of this Court that while it appears that BZA member Shaffer may not have fully complied with §4(F) of the BZA bylaws, such an infraction does not have an impact on the final BZA vote on either V11-46 or V11-47; and therefore, does not serve as a basis for this Court to reverse the May 16, 2012, variance decisions by the BZA.

Petitioner challenges a September 17, 2010, memorandum from City Planner, Chris Fletcher, to Petitioner's Engineer, Scott Krabill. That September 17, 2010, memorandum is part of the BZA record in this matter and contains a summation of several zoning requirements that Petitioner would need to address at his 426 Drummond Street realty. One of the issues addressed in that memorandum is the requirement for the construction of a sidewalk.

Petitioner argues that neither he nor his engineer ever received that memorandum, and for that reason, he was not aware until months later, after he had already concreted the parking lot and the project was completed, that the zoning ordinance required him to construct a sidewalk. In support of his argument the BZA record includes an affidavit, executed by Scott Krabill on February 29, 2012, which reads as follows:

> To the best of my knowledge and recollection,
> I did not receive the Memorandum (see attached)
> dated September 17, 2010, regarding EG 2010-3;
> 426 Drummond Street, Andrew Smith. It was
> not hand delivered to me by Chris Fletcher,
> AICP, of the Planning Department.

17

This Court has carefully reviewed that September 17, 2010, memorandum and the transcript of the May 16, 2012, BZA meeting which contains the City Planner's explanation as to why he wrote the detailed memorandum in preparation for the September meeting with Scott Krabill, and why he reviewed each and every point of his memorandum with Scott Krabill when the two of them met on September 17, 2010.

This Court believes that the record supports Respondent's position that City Planner, Chris Fletcher, did in fact deliver the September 17, 2010, memorandum to Scott Krabill. The only document within the record that draws question as to whether the document was delivered to Scott Krabill is the February 29, 2012, affidavit of Scott Krabill. The Court places significant weight upon not only the fact that Mr. Krabill executed that affidavit approximately seventeen months after his September 17, 2010, meeting with the City Planner, but also, upon the fact that in his affidavit Mr. Krabill states "to the best of my knowledge and recollection, I did not receive the memorandum." To this Court, those words arguably mean that after seventeen months, Mr. Krabill simply does not recall receiving the document. When one weighs the facts within the record, the Court is of the opinion that more likely than not, the memorandum was given to Mr. Krabill on September 17, 2010. With that said, even if the Court believed that Mr. Krabill did not receive that memorandum, the Court would not be persuaded to reverse the May 16, 2012, variance decisions of the BZA based solely upon that fact. It does not change the fact that the record clearly shows that Petitioner performed all of the concrete paving work in question without having received a valid building permit from the City authorizing him to do so; that sidewalk construction is a zoning ordinance requirement for the realty in question; that prior to his paving the parking lot, Petitioner was told not to do so until he had received a valid building

18

permit and all applicable zoning requirements had been addressed. This Court can find no basis in this allegation for it do disturb the BZA's May 16, 2012, variance decision.

Petitioner next argues that Drummond Street is a state roadway and due to that fact the City of Morgantown's zoning ordinance, as it applies to landscaping buffers and sidewalks, is inapplicable to his realty. Petitioner asserts that the West Virginia Division of Highways issued a permit to him on November 2, 2011, addressing ingress and egress to his realty, a front buffer, and site distance and clearance to his realty, and for that reason, the City of Morgantown does not have jurisdiction through its zoning ordinance to impose sidewalk and landscaping buffer requirements upon him that are more stringent than or conflict with those already imposed by the state. The November 2, 2011, Department of Highways permit is contained within the BZA record. Upon review, the permit and attached plan indicate that Petitioner was applying for and receiving permission to construct a twenty five (25) foot wide driveway/access point for his realty on Drummond Street. Nowhere on the permit or its attachments is landscaping on Petitioner's realty or sidewalk construction addressed. Simply put, Petitioner's permit is an "access permit" to a state route.

The City of Morgantown's zoning ordinance is applicable to all properties located within the City including those that abutt state highways. That would include Petitioner's realty. The Court can find no governmental jurisdictional issues in the matter, and finds no conflict between the Division of Highways permit issued to Petitioner, and the City of Morgantown zoning ordinance requirements imposed upon him.

In his November 19, 2012, brief to this Court, Petitioner for the first time presents arguments regarding the interpretation and applicability of §§1341.07 and 1367.02(b) of the

19

City's zoning ordinance, and argues that if those sections are interpreted properly, the May 16, 2012, variance decisions by the BZA were incorrect. Respondent argues that Petitioner has waived his right to raise this argument with the Court. The BZA record shows that both arguments were previously made in administrative appeals by Petitioner and heard by the BZA. The administrative appeals were assigned case numbers BA12-01 and BA12-02. Both appeals were heard and decided by the BZA on May 16, 2012, prior to the BZA hearing and deciding Petitioner's V11-46 and V11-47 variance requests. Both of the administrative appeals and the decisions on them by the BZA are subject to the Circuit Court appeal process rules set forth in §8A-9-1 of the West Virginia Land Use Planning Act and Article 1383 of the City of Morgantown Zoning Ordinance. §8A-9-1(a) states that every decision of a board of zoning appeals is subject to review by certiorari. §8A-9-1(b) states that within thirty days after a decision or order by a board of zoning appeals, any aggrieved person may present to the circuit court a duly verified petition for writ of certiorari setting forth that the decision or order of the board of zoning appeals is illegal and the specific grounds of the alleged illegality. Article 1383 of the City's zoning ordinance restates the requirements of §8A-9-1(a) and §8A-9-1(b). By letters dated May 17, 2012, the City Planner, on behalf of the BZA, presented the Petitioner with written decisions of the BZA for both BA12-01 and BA12-02. In each of the two letters, Petitioner was advised that he had thirty (30) days to appeal the decisions to the Circuit Court of Monongalia County. Petitioner appealed neither decision to Circuit Court within the thirty (30) day period. Both BZA administrative appeal decisions rejected the arguments now being presented by Petitioner to the Court. Pettioner has waived his right to now make his arguments regarding §§1341.07 and 1367.02(b) to this Court in an effort to have the May 16, 2012, variance decisions

20

of the BZA reversed. Both BZA administrative appeal decisions rejected the arguments now being presented by Petitioner to the Court.

In his November 19, 2012, brief, Petitioner for the first time, asserts that the City violated §1383.06 by not proper notifying affected property owners of Petitioner's Certiorari appeal. Petitioner's assertion is incorrect for the following reasons:

1. A municipal corporation possesses and can exercise the following powers, and no others: (1) those granted in express word by general statutes or charters; (2) those necessarily or fairly implied in or incidental to the powers expressly so granted; (3) those essential to the declared objects and purposes of the corporation; not simply convenient; but indispensable. State ex rel. Sheldon v. City of Wheeling, 146 W.Va. 691, 122 S.E.2d 427, 1961 (W.Va.); Maxey v. City of Bluefield, 151 W.Va. 302, 151 S.E.2d 689, 1966 (W.Va.).

2. Where a fair, substantial, reasonable doubt exists as to whether a municipal corporation is possessed of a power, the power must be denied. Hyre v. Brown, 102 W.Va. 505, 135 S.E. 656, 1926 (W.Va.); State ex rel Sheldon v. City of Wheeling, 146 W.Va. 691, 122 S.E.2d 427, 1961 (W.Va.); Maxey v. City of Bluefield, 151 W.Va. 302, 151 S.E.2d 689, 1966 (W.Va.).

3. The statutory requirements contained within Chapter 8A of the West Virginia Land Use Planning Act apply to all West Virginia municipalities that adopt a planning and zoning code; and a municipality has no legal authority to include language within its zoning ordinance that conflicts with that contained within Chapter 8A.

4. §8A-9-2 of the West Virginia Code addresses "Notice to adverse parties" Upon the filing of a petition for writ of certiorari. §8A-9-2 specifically states that it is the responsibility of the Petitioner, not the City, to notify property owners, who oppose the zoning request of Petitioner, of the filing of a petition for writ of certiorari.

5. The language within §1383.06 of the City's Zoning Ordinance conflicts with that within §8A-9-2, and therefore must yield to the requirements of §8A-9-2. For that reason, Petitioner, and not the City, is the one who appears to have not complied with the applicable law regarding the providing of notice that a certiorari petition has been filed.

The Court rejects Petitioner's notice argument.

Having thoroughly addressed the arguments presented by Petitioner, it is the opinion of this Court that the BZA did not apply erroneous principles of law, was not plainly wrong in its actual findings, and did not act beyond its jurisdiction. For that reason, this Court has no authority to disturb the May 16, 2012, variance decisions of the BZA that have been appealed in this matter.

This Court is of the opinion that it has the authority to rule when the Petitioner must comply with the May 16, 2012, variance decisions. Inasmuch as there are presently no sidewalks on Drummond Street, the Court believes it is reasonable that within sixty (60) days after the commencement of the construction of a sidewalk along Drummond Street fronting on any piece of realty abutting 426 Drummond Street, Petitioner shall be required to construct a five (5) foot wide sidewalk along the entire frontage of 426 Drummond Street. As to Petitioner's concrete parking lot, and landscaping, the Court is of the opinion that by no later than May 1, 2013, Petitioner shall remove all portions of his concrete lot that are within ten (10) feet of the Drummond Street yellow curb and landscape the five foot wide area as decided by the Morgantown BZA on May 16, 2012.

**WHEREFORE**, given the foregoing, the Court **ORDERS** that Petitioner's request for relief is denied and the May 16, 2012, variance decisions of the Morgantown Board of Zoning Appeals upheld. It is further **ORDERED** that this Court retain jurisdiction over this matter and not dismiss it from the Court's docket until such time as Petitioner has complied with all requirements that the Court has placed upon him regarding the removal of portions of the concrete parking lot and installation of landscaping.

22

The Circuit Clerk shall provide copies of this order, findings of fact, and conclusions of law to both Respondent's counsel and to Andrew Smith.

Entered this 28th day of February, 2013.

Honorable Phillip D. Gaujot

STATE OF WEST VIRGINIA SS:

I, Jean Friend, Clerk of the Circuit Court and Family Court of Monongalia County State aforesaid do hereby certify that the attached Order is a true copy of the original Order made and entered by said Court.

_____ Circuit Clerk